Derick **GARRAWAY**, Plaintiff,

v.

**DIVERSIFIED MATERIAL HANDLING INC., et al.,** Defendants.

No. 3:96 CV 7393.

United States District Court,
N.D. Ohio,
Western Division.

July 25, 1997.

Kevin J. Kenney, Bruce D. Lazar, Bischoff, Kenney, Drescher & Niehaus, Sylvania, OH, for Derick Garraway.

Thomas T. Schell, Schell & Schaefer, Toledo, OH, Stephen A. Schaefer, Law Offices of Stephen A. Schaefer, Maumee, OH, for Diversified Material Handling Inc.

Robert Z. Kaplan, Samuel Z. Kaplan, Kaplan & Lipson, Toledo, OH, for Sam Ladd.

Ann Marie Hawkins, Cleveland, OH, for ILT Diversified Material Handling, Inc.

## AMENDED MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendant Sam Ladd's motion for partial summary judgment. Defendant's motion for partial summary judgment will be granted in part and denied in part.

### I. BACKGROUND

Plaintiff Derick Garraway, a black Guyanese living in the United States, was employed as a mechanic by Defendant Diversified Materials Handling (DMH) from

October 3, 1983 until his termination on March 29, 1996. Defendant Sam Ladd was DMH's Vice President of Operations at all times pertinent to this action. Plaintiff alleges that Defendants discriminated against him on the basis of his race by denying him training and promotion opportunities; that Defendant Ladd engaged in a pattern of harassment and racial slurs; and that Defendant DMH terminated him in retaliation for his filing of a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC").

Plaintiff alleges that during his twelve-and-a-half years of employment at DMH, Ladd engaged in an ongoing pattern of racial discrimination and harassment against him. He alleges that Ladd prevented him from attending mechanic training seminars, unfairly found fault with his work, and repeatedly subjected him to derogatory remarks such as: "chicken-bone-in-the-nose motherfucking nigger;" "I should ship you back to Africa;" and "everyone knows how I hate niggers like Derick." Ladd admits that he used the word "nigger" in the workplace, but says he never used it in a derogatory manner.

Effective April 1, 1996, DMH sold all of its assets to ILT Diversified Materials Handling, Inc. ("ILT"). Ownership and top management of the corporation changed, but company staff and operations otherwise remained basically the same. Incident to the asset sale, DMH terminated all of its employees effective March 29, 1996.[1] ILT rehired all of DMH's employees except for Plaintiff and a white mechanic named David Gettan. Gettan is described as being such a bad employee that "we could write a book on how bad." (Ladd Dep., Vol. 1 at 102.) No reason was given for ILT's failure to rehire Plaintiff.

On May 21, 1996, Plaintiff filed the instant action in the Lucas County, Ohio Court of Common Pleas, and Defendants removed to this Court. Four counts of Plaintiff's amended complaint raise claims against Defendant Ladd. In Count V, Plaintiff alleges that Defendant Ladd verbally harassed him and discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. In Count VI, Plaintiff alleges that Defendant Ladd denied him training opportunities on the basis of his race in violation of Title VII. In Count VIII, Plaintiff alleges that Defendant Ladd verbally harassed him and discriminated against him and denied him training opportunities on the basis of his race in violation of the Ohio Civil Rights Act. In Count IX, he raises a defamation claim against Ladd.

Defendant Ladd has moved for summary judgment on all Counts pertaining to him. As to Counts V, VI, and VII, he argues (1) that there can be no individual liability under Title VII or the Ohio Civil Rights Act, and (2) that even if there can be individual liability under either statute, no reasonable jury could find his acts towards Plaintiff to be discriminatory. As to Count IX, he argues that mere racial epithets and insults do not constitute defamation as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

---

**1.** March 29, 1996 was a Friday. April 1, 1996 was a Monday.

L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## B. Counts V, VI, and VIII: Employment Discrimination

### 1. Individual Liability Under Title VII and the Ohio Civil Rights Act

#### a. Individual Liability Under Title VII

█ It is clear under recent Sixth Circuit precedent that there can be no liability for Defendant Ladd under Title VII if he does not, himself, qualify as an "employer" for Title VII purposes. The Sixth Circuit has held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (1997). Plaintiff argues, however, that Ladd qualifies as an "employer" independent of his supervisory capacity, because he exercised significant control over hiring, firing, and other conditions of employment in his capacity as vice president of DMH. Since the Sixth Circuit did not expressly hold that a supervisor who exercises significant control over hiring, firing, and other conditions of employment cannot be an "employer" for purposes of Title VII liability, the Court looks to the statutory language and decisions of other Federal Courts for guidance in deciding this issue.

Every Circuit Court to address the issue of individual liability since 1991 has held that the sole purpose of the provision in Title VII extending liability to the employer's agents was to incorporate respondeat superior liability into the statute, and that an agent cannot be sued for damages in his individual capacity. *See, e.g., Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1312 (2d Cir.1995); *Greenlaw v. Garrett,* 59 F.3d 994, 1001 (9th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 110, 136 L.Ed.2d 63 (1996); *Gary v. Long,* 59 F.3d 1391, 1400 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *U.S. E.E.O.C. v. AIC Security Investigations,* 55 F.3d 1276, 1281 (7th Cir.1995); *Lenhardt v. Basic Inst. of Tech.,* 55 F.3d 377, 381 (8th Cir.1995); *Grant v. Lone Star Co.,* 21 F.3d 649, 652 (5th Cir.1994); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (per curiam). These Courts have used both Title VII's statutory scheme and its remedial provisions to support that conclusion. The fact that liability under Title VII is expressly limited to employers with fifteen or more employees indicates that Congress intended to limit liability to employer-entities—not individual defendants. In light of the protection Congress gave to small entities with limited resources to defend against discrimination claims, it is reasonable to suppose that Congress would intend this same protection to extend to individual defendants as well. *See Tomka,* 66 F.3d at 1314; *Miller,* 991 F.2d at 587.

The Fourth Circuit, while generally rejecting the concept of individual liability under Title VII, has held that a supervisory employee may be personally liable under Title VII if he "serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *rev'd in part on other grounds,* 900 F.2d 27 (4th Cir.1990) (en

banc). That holding relies on the statutory language permitting "employer" status for an agent of a statutory employer under certain circumstances, and the Sixth Circuit has expressly rejected that position. Furthermore, the *Paroline* holding is questionable even in the Fourth Circuit in light of that Circuit's subsequent decision in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994), which rejected supervisory employee liability under the Age Discrimination in Employment Act.

This Court agrees with the reasoning of the majority of Courts of Appeals. Part of the statutory definition of "employer" under Title VII is "a person ... who has fifteen or more employees," 42 U.S.C. § 2000e(b), and Ladd did not have any employees. Since Ladd is a supervisor who does not otherwise qualify as an "employer" under Title VII, his motion for summary judgment must be granted on Counts V and VI, which raise federal claims.

b. *Individual Liability Under the Ohio Civil Rights Act*

■ Defendant Ladd has also argued that the Ohio Civil Rights Act does not impose liability on individual employees. Defendant Ladd bases his argument on the well-known principle that the standard for establishing a *prima facie* case of discrimination is the same under Title VII and Ohio law. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128 (1981). He argues that since the standard for making out a *prima facie* case of discrimination is the same under both statutes, the Court should also construe the definitions of "employer" the same.

Title VII defines an employer as "a person engaged in an industry affecting commerce ... and any agent of such a person...." 42 U.S.C. § 2000e(b). Ohio law defines an employer as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Rev.Code § 4112.01(A)(2). Thus, the issue is whether the phrase "any person acting directly or indirectly in the interest of an employer"

includes individual employees in the definition of "employer" so as to create individual liability, or whether it merely operates to incorporate respondeat superior liability into the statute.

■ In construing questions of state law, the District Court sits as a state court, and must apply state law in accordance with the controlling decisions of the highest court of the state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not addressed the issue, the District Court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts, other Federal Courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the "majority" rule in making this determination. *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir.1987). A Federal Court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

The Ohio Supreme Court has never addressed the issue of whether § 4112.99 imposes individual liability on employees for sex discrimination. This Court's review of the decisions of Ohio intermediate appellate decisions indicates that those courts have consistently held that individual employees can be liable under § 4112.99. In *Davis v. Black*, 70 Ohio App.3d 359, 370, 591 N.E.2d 11, 19 (1991), the Ohio Court of Appeals reversed a lower court's holding that § 4112.99 did not impose individual liability, and expressly held that "the supervisor for whom an employer may be vicariously liable under the doctrine of respondeat superior is also an employer within this definition." Individual liability was upheld without comment in *Neal v. Hamilton County*, 87 Ohio App.3d 670, 622 N.E.2d 1130 (1993); *Frank v. Toledo Hosp.*, 84 Ohio App.3d 610, 617 N.E.2d 774 (1992); *Barney v. Chi Chi's, Inc.*, 84 Ohio App.3d 40, 616 N.E.2d 269 (1992); and *Larkins v. G.D.*

*Searle & Co.,* 68 Ohio App.3d 746, 750–51, 589 N.E.2d 488, 491 (1991).

Five Federal District Courts applying Ohio law have addressed the issue of individual liability under § 4112.99, and have come to differing conclusions. In *DeLoach v. American Red Cross,* 967 F.Supp. 265 (N.D.Ohio 1997) (Wells, J.), *Griswold v. Fresenius USA, Inc.,* 964 F.Supp. 1166, 1169–71 (Katz, J.), and *Johnson v. University Surgical Group Assocs.,* 871 F.Supp. 979, 987 (S.D.Ohio 1994) (Spiegel, J.), Federal Courts found that Ohio courts had at least implicitly approved individual liability under § 4112.99, and held that a co-employee could be held individually liable under that statute. *DeLoach* and *Griswold* both expressly held that § 4112.99 permitted individual liability for supervisors, although Title VII did not.

In *Gausmann v. City of Ashland,* 926 F.Supp. 635, 641 (N.D.Ohio 1996) (O'Malley, J.) and *Czupih v. Card Pak, Inc.,* 916 F.Supp. 687, 691 (N.D.Ohio) (Nugent, J.), on the other hand, Courts found that the same reasoning behind precluding individual liability under Title VII also precluded individual liability under § 4112.99.

Based on the foregoing, most importantly the interpretation by Ohio appellate courts, this Court is convinced that § 4112.99, unlike Title VII, must be construed to permit individual liability for acts that violate Ohio's employment discrimination law, despite the fact that this construction means that a broader class of individuals may be liable under state law than under federal law. Although disposition of this issue would certainly be neater and cleaner if the state and federal statutes were construed identically, Ohio state courts have consistently construed § 4112.99 to permit individual liability. Also, the fact that the Ohio employment discrimination statutes apply to employers with four or more employees, while the analogous federal statutes apply only to employers with fifteen or more employees, evinces a legislative intent for the state statute to cover a larger class of persons than does the federal statute; the Court's construction is in harmony with that evident intent.

Thus, the Court proceeds to address Defendant Ladd's summary judgment motion on Count VIII—Plaintiff's state law claim—on the merits.

### 2. Legal Standard for Showing Employment Discrimination

It is unlawful under Ohio law "[f]or any employer, because of the ... race ... of any person ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202–03, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164, 1167 (1991), *cert. denied,* 503 U.S. 906 112 S.Ct. 1263, 117 L.Ed.2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n,* 99 Ohio App.3d 557, 562, 651 N.E.2d 440, 444 (1994); *Twinsburg City Schools v. Ohio Civil Rights Comm'n,* 86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593 (1993).

Plaintiff alleges that Defendant Ladd engaged in two types of racial discrimination against him: (1) job status discrimination, in which action is taken that adversely affects the employee's job status, remuneration, or benefits based on the employee's membership in a protected class; and (2) hostile environment discrimination, in which the employee is subjected to offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment. The Court addresses both claims below.

### a. Job Status Discrimination

Plaintiff alleges that Defendant Ladd engaged in job status discrimination by denying Plaintiff job training opportunities. The employee carries the initial burden of establishing a prima facie case of job status discrimi-

nation in employment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817,1824,36 L.Ed.2d 668 (1973). An employee establishes a prima facie case of discrimination by presenting evidence which, when viewed in the light most favorable to him, would permit a reasonable jury to find that he was denied advancement opportunities because of his race. *See Rose v. National Cash Register Corp.,* 703 F.2d 225, 227 (6th Cir.1983).

He can meet this burden by presenting either direct or circumstantial evidence of discrimination. Direct evidence is found, for instance, where an employer's policy is discriminatory on its face, *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985), or where a corporate decisionmaker expressly states a desire to remove employees in the protected group, *see LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379–80 (6th Cir.1993). In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even had it not been motivated by impermissible discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989) (plurality opinion); *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994).

Where no direct evidence of discrimination exists, an employee can establish his prima facie case by indirect or circumstantial evidence. In that instance, he must show (1) that he is a member of the protected class; (2) that he was denied advancement opportunities or training; (3) that he was otherwise qualified for such training; and (4) that other individuals outside the protected class received more favorable treatment. *See Siegel v. Alpha Wire Corp.,* 894 F.2d 50, 53 (3rd Cir.1990); *Gagné v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989). Where the plaintiff presents only circumstantial evidence of discrimination, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the employer has met its burden, the burden shifts back to the employee to show that the employer's stated reason for the adverse action is pretextual. *Id.* at 804, 93 S.Ct. at 1825. In circumstantial evidence cases, the burden of persuasion remains at all times with the employee. *Gagné,* 881 F.2d at 315–16.

**b.** *Hostile Environment Discrimination*

Plaintiff alleges that Defendant Ladd engaged in hostile environment discrimination by subjecting him to racial epithets and insults during the twelve years he was employed at DMH. Racial harassment which creates an offensive or hostile work environment is actionable under Title VII. *Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). A hostile work environment exists whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Conduct that is "merely offensive" but "not severe or pervasive enough to create an objectively hostile or abusive work environment" does not violate Title VII, but the plaintiff need not show that the conduct of which he complains was of such severity that it would be psychologically injurious to a reasonable person. *Id.* at 21–24, 114 S.Ct. at 370–71.

**3.** *Application to the Case at Bar*

Plaintiff has shown sufficient evidence of discrimination to withstand a motion for summary judgment on both of the discrimination claims against Defendant Ladd.

**a.** *Job Status Discrimination*

■ Defendant Ladd argues that he is entitled to summary judgment on Plaintiff's claims of job status discrimination for a number of reasons. Ladd alleges that the fact that he hired Plaintiff and approved his

pay raises raises a presumption of no discrimination. Ladd also points out that Plaintiff never complained to Ladd or any of his superiors about his being denied job training opportunities. He states that most of the mechanics employed by DMH—not just Plaintiff—believe they are underpaid. And he states that Plaintiff was unable at his deposition to identify anyone of equal or lesser qualification who either was promoted over him or received higher wages than he.

As to denial of entry into training programs, Plaintiff responds that he asked Ladd about attending training programs, but that Ladd said nothing and walked away. Other employees state that Ladd, the man who exclusively decided who would attend training programs, said he was not going to waste company money training a "dumb fucking nigger." That is more than a scintilla of evidence that Ladd denied Plaintiff the opportunity to participate in training programs on the basis of his race.

As to Plaintiff's claims that he was being underpaid, Plaintiff has submitted evidence that Plaintiff received wage increases averaging 5.56% per annum, while white employees received wage increases averaging 17.2% per annum. Some of that disparity is doubtless due to the fact that Plaintiff did not attend training programs. Whether the disparity occurred because of direct wage discrimination, or because Plaintiff's skills were lower because he had been denied entry into training programs on the basis of his race, Plaintiff has provided more than a scintilla of evidence that Ladd took Plaintiff's race into account in making his wage increase determinations.

b. *Hostile Environment Discrimination*

Defendant Ladd rests his motion for summary judgment on Plaintiff's hostile environment claim on the sole ground that Plaintiff never complained about Ladd's behavior. Ladd nowhere denies that he regularly subjected Plaintiff to a plethora of racial epithets and insults, which rival any this Court has seen for vulgarity and offensiveness; in fact, he admits to having made such statements. Plaintiff has submitted, in addition to his own testimony, the statements of eight of Plaintiff's co-workers, who all confirm that vile racial insults occurred as a matter of course in Plaintiff's workplace. Plaintiff has provided more than a scintilla of evidence that Ladd subjected him to a hostile work environment.

4. *Summary*

Therefore, Defendant Ladd's motion for summary judgment must be granted as to Counts V and VI, and denied as to Count VIII of Plaintiff's complaint.

C. *Count IX: Defamation*

Plaintiff alleges that Defendant Ladd's insults constitute defamation because Ladd publicly impugned Plaintiff's intelligence and competence when he made those statements. Under Ohio law, a plaintiff makes out a claim for defamation by showing:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Akron-Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.,* 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962 (1992) (quoting Restatement (Second) of Torts § 558 (1977)). A defamatory statement is a false statement "causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business." *Matalka v. Lagemann,* 21 Ohio App.3d 134, 136, 486 N.E.2d 1220, 1222 (1985). In the absence of special damages, liability is found only where the statement imports a charge of an indictable offense involving moral turpitude that subjects the offender to infamous punishment, or imputes some offensive or contagious disease calculated to deprive the person of society, or tends to injure him in his trade, occupation, or profession. *Kilroy v. Lebanon Correctional Inst.,* 61 Ohio Misc.2d 156, 575 N.E.2d 903, 906 (Ohio Ct.Cl.1991).

Verbal abuse such as obscenities, vulgarities, insults, epithets, name calling and other rhetorical hyperbole is not in itself actionable and libelous. *Dworkin v. L.F.P., Inc.,* 839 P.2d 903, 916 (Wyo.1992); *Wilson v. Grant,* 297 N.J.Super. 128, 687 A.2d 1009, 1013 (1996), *certification denied,* 149 N.J. 34, 692 A.2d 48 (1997), *petition for cert. filed,* (U.S. June 9, 1997) (No. 96–9356).

It is clear from the record that the linguistic opprobrium heaped on Plaintiff by Defendant Ladd, though highly objectionable and offensive, was mere verbal abuse of the sort that is not actionable as defamation. Ladd's words had no real meaning except to indicate that he strongly disliked Plaintiff. The vulgar phraseology selected by Ladd reflects more on his own character than that of Plaintiff. *See Curtis Publishing Co. v. Birdsong,* 360 F.2d 344, 348 (5th Cir.1966).

Plaintiff has cited this Court to no case, and this Court is aware of none, in which racially based epithets and insults were held to be actionable as defamation. Plaintiff has not made out a claim of defamation under Ohio law. Therefore, Defendant Ladd's motion for summary judgment must be granted on Count IX of Plaintiff's complaint.

### III. Conclusion

For the foregoing reasons, Defendant Ladd's motion for summary judgment is granted as to Counts V, VI, and IX of Plaintiff's amended complaint, and denied as to Count VIII of Plaintiff's amended complaint.

IT IS SO ORDERED.