**WILSON, Appellant,**

v.

**HARVEY et al., Appellees.**

[Cite as *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85829.

Decided Oct. 27, 2005.

Robert D. Wilson, for appellant.

James R. Protasio, for appellees.

———————

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant, Jeffrey R. Wilson, appeals the trial court's decision directing a verdict in favor of defendants-appellees, Alexander Harvey, Yixing Chen, and Michael Marcello. Finding no merit to the appeal, we affirm.

{¶ 2} In April 2004, Wilson filed an action against appellees for defamation, invasion of privacy, and civil conspiracy. The matter proceeded before a jury, where the following evidence was presented.

{¶ 3} In March 2004, the parties were students at Case Western Reserve University ("Case") and resided on the same floor of a campus dormitory. On a weekend when Wilson was away, appellees created computer-generated flyers depicting Wilson as a homosexual. The flyers were entitled "[I]n Search of Male Companion" and included a picture of Wilson that appellees had downloaded from Case's website. The flyer also provided Wilson's name, university e-mail address, and campus phone number. The text of the flyer included the following

statements: "Looking for non-smoking GWM[1] who enjoys dominating" and "Interests include: Biology, kissing, crying at movies, picking flowers and dreaming of that special someguy * * *" After appellees created the flyers, they displayed approximately 20 to 25 of them on the north side of the Case campus.

{¶ 4} Wilson testified that he was not a homosexual and that he received numerous phone calls and e-mails inquiring about the flyers. He also testified that he was embarrassed, humiliated, and ridiculed because of the creation and publication of the flyers. According to Wilson, he suffered a loss of reputation, a loss of time, and a lower grade point average ("GPA") and also incurred additional expenses due to his commuting from home during a nine-day period in April 2004.

{¶ 5} Harvey and Marcello testified that they created the flyers as a joke to get even with Wilson for incidents that occurred in the dorm. They also testified that they did not like Wilson. Chen testified that although he was aware of the flyers, he did not participate in creating or posting them.

{¶ 6} At the close of Wilson's case, appellees moved for a directed verdict. The trial court granted the motion and dismissed the case. Wilson appeals this decision, raising two assignments of error, which will be addressed together.

{¶ 7} In his first assignment of error, Wilson argues that the trial court erred in granting a directed verdict in favor of the appellees. In his second assignment of error, Wilson claims that the trial court erred in finding that the flyer was not libel per se in its July 2004 entry denying appellees' motion to dismiss.[2]

{¶ 8} The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 9} A motion for a directed verdict tests the legal sufficiency of the evidence presented; accordingly, neither the weight of the evidence nor the credibility of witnesses may be considered. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610, citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d

---

1. Wilson and appellees testified that "GWM" is an acronym for "gay white male."

2. We note that appellant has failed to separately argue the assignments of error as required under App.R. 16(A)(7). However, we are able to glean from the brief those arguments that pertain to the assignments of error and will address them.

282, 21 O.O.3d 177, 423 N.E.2d 467. In addition, all reasonable inferences that may be drawn from the evidence must be made in favor of the nonmoving party. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 21 OBR 345, 487 N.E.2d 920. If substantial, competent evidence has been presented from which reasonable minds could draw different conclusions, then the motion must be denied. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252.

{¶ 10} Because a directed verdict presents a question of law, we review the trial court's judgment de novo. *Hardy v. Gen. Motors Corp.* (1998), 126 Ohio App.3d 455, 462, 710 N.E.2d 764, citing *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957.

{¶ 11} Before addressing the merits of the appeal, we address the effect of the stipulations to which the parties agreed prior to trial.

{¶ 12} A stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue. *In re All Kelley & Ferraro Asbestos Cases,* Cuyahoga App. Nos. 83348 and 83628, 2005-Ohio-2608, 2005 WL 1245639, citing *Rice v. Rice* (Nov. 8, 2001), Cuyahoga App. No. 78682, 2001 WL 1400012. A stipulation may also be defined as a voluntary agreement, admission, or concession made by the parties or their attorneys concerning disposition of some relevant point in order to eliminate the need for proof or to narrow the range of issues to be litigated. *State v. Small,* 162 Ohio App.3d 375, 2005-Ohio-3813, 833 N.E.2d 774; *Baum v. Baum* (Nov. 26, 1997), Wayne App. No. 97CA0022, 1997 WL 775770.

{¶ 13} In the instant case, Wilson filed undisputed fact stipulations. When trial commenced, defense counsel agreed with these stipulations. However, the trial court did not accept stipulations 29, 30, 32, and 33 because they were conclusions of law. The court stated that it did not allow parties to reach and stipulate to conclusions of law.

{¶ 14} We find that two stipulations that were accepted by the court also involve legal conclusions. Stipulations 23 and 24 provide:

23. The Posters contained false and defamatory statements about Plaintiff reflecting his character by bringing him into ridicule, embarrassment[,] and humiliation.

24. The creation and publication of the Posters was malicious and intended to injure Plaintiff's reputation and cause damage.

{¶ 15} "Although litigants may stipulate to facts, they may not stipulate as to what the law requires." *Crow v. Nationwide Mut. Ins. Co.,* 159 Ohio App.3d 417, 2004-Ohio-7117, 824 N.E.2d 127, citing *Diversified Capping Equip.,*

*Inc. v. Clinton Pattern Works Inc.* (Apr. 12, 2002), Wood App. No. WD–01–035, 2002 WL 537998. Therefore, stipulations of law or as to legal conclusions are not binding on the court. *Id.* at 421, 2004-Ohio-7117, 824 N.E.2d 127, citing *Diversified*, supra. " '[S]tipulations involving legal conclusions do not relieve a trial court of its duty to determine matters "upon its own analysis of the pertinent facts and legal theories." ' " *Id.* at 421, 2004-Ohio-7117, 824 N.E.2d 127, quoting *Burdge v. Franklin Cty. Bd. of Commrs.* (1982), 7 Ohio App.3d 356, 357–358, 7 OBR 454, 455 N.E.2d 1055.

{¶ 16} Therefore, we find that stipulations 23 and 24 involve legal conclusions and thus were not binding on the court. These stipulations had no effect on the trial and have no effect on the merits of this appeal.

### Defamation

{¶ 17} "Defamation is the unprivileged publication of a false and defamatory matter about another." *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 353, 609 N.E.2d 216. A defamatory statement is one that tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame, or disgrace or affects him in his trade or business. *Id.*, citing *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 486 N.E.2d 1220. A defamatory statement expressed in a writing, a picture, a sign, or an electronic broadcast is considered libel. Garner, Black's Law Dictionary (7th Ed.1999) 927. Therefore, Ohio generally defines "libel" as a " 'false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame[,] or disgrace or affecting a person adversely in his trade, business or profession.' " *Stokes v. Meimaris* (1996), 111 Ohio App.3d 176, 184, 675 N.E.2d 1289, quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283.

{¶ 18} Ohio recognizes two actionable types of libel: libel per se and libel per quod. *Stokes*, supra, quoting *Thomas H. Maloney & Sons, Inc., v. E.W. Scripps Co.* (1974), 43 Ohio App.2d 105, 108, 72 O.O.2d 313, 334 N.E.2d 494. Determining whether a statement is libel per se or per quod is a question of law for the trial court. *Id.*, citing *Fish v. Heatherdowns Country Club Assoc.* (June 7, 1991), Lucas App. No. L–90–072, 1991 WL 97324.

### Libel per se

{¶ 19} "Libel per se" is defined as something actionable in itself, i.e., it is libel by the very meaning of the words used. *Stokes*, supra, 111 Ohio App.3d 176, 675 N.E.2d 1289; *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 191, 2002-Ohio-6803, 783 N.E.2d 920. Actual malice and damages are presumed

in an action for libel per se and thus need not be proven. *McCartney,* supra, 80 Ohio App.3d at 354, 609 N.E.2d 216.

{¶ 20} In order to be considered libel per se, the words used in the publication must fall into one of three categories: "(1) the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment, (2) the imputation of some offensive or contagious diseases calculated to deprive the person of society, or (3) having the tendency to injure the plaintiff in his trade or occupation." *Williams v. Gannett Satellite Information Network, Inc.,* 162 Ohio App.3d 596, 2005-Ohio-4141, 834 N.E.2d 397, at ¶ 8, citing *Schoedler v. Motometer Gauge & Equip. Corp.* (1938), 134 Ohio St. 78, 84, 11 O.O. 487, 15 N.E.2d 958.

{¶ 21} In the instant case, publicizing that someone is a homosexual is not libel per se, because homosexuality is not a crime, nor is it a disease. Additionally, being a homosexual would not tend to injure a person in his trade or occupation. Therefore, the trial court did not err in its July 2004 ruling that Wilson could not maintain a cause of action for libel per se. Moreover, the court did not err in reaffirming this holding by directing a verdict in favor of appellees on this issue.

## Libel per quod

{¶ 22} Even though a statement may not be libel per se, it may be libel per quod. "Libel per quod" is defined as a statement with an apparently innocent meaning that may become defamatory through interpretation or innuendo. *Stokes,* supra, 111 Ohio App.3d at 184, 675 N.E.2d 1289; *Kanjuka,* supra, 151 Ohio App.3d at 191, 783 N.E.2d 920. Whereas actual malice and damages are presumed in libel per se, a plaintiff must plead and prove special damages in an action for libel per quod. *McCartney,* supra, 80 Ohio App.3d at 354, 609 N.E.2d 216.

{¶ 23} In the instant case, the flyer stated that Wilson was in search of a male companion. It further stated that he was looking for a nonsmoking, gay, white male who enjoyed dominating and that his interests included biology, kissing, crying at movies, picking flowers, and "dreaming of that special someguy." Although this flyer may be facially innocent, it might become defamatory through interpretation or innuendo if used to imply that someone is a homosexual, when in fact he is not. Therefore, we find that falsely publicizing that someone is a homosexual may be libel per quod, but only if special damages are pleaded and proven.

{¶ 24} "Special damages" have been defined as those " 'of such a nature that they do not necessarily follow from a defamatory remark.' " *Stokes,* supra, 111 Ohio App.3d at 185, 675 N.E.2d 1289, quoting *King v. Bogner* (1993), 88 Ohio

App.3d 564, 568, 624 N.E.2d 364; *Gennari v. Andres–Tucker Funeral Home* (1986), 21 Ohio St.3d 102, 106, 21 OBR 395, 488 N.E.2d 174. The Ohio Supreme Court has held that special damages are damages that " 'result from conduct of a person other than the defamer or the one defamed.' " Id., quoting *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 594, 21 O.O. 471, 37 N.E.2d 584.

{¶ 25} Wilson claims that his special damages include humiliation, embarrassment, mental anguish, harassment, annoyance, ridicule, and loss of reputation. He further claims that he had to commute two hours, round trip, from his parents' home to Case for approximately nine days, during which he incurred additional travel expenses and lost time. At trial, he also testified that his GPA had suffered due to this incident.

{¶ 26} Wilson urges us to follow our holding in *Stokes,* supra, 111 Ohio App.3d 176, 675 N.E.2d 1289. The *Stokes* case involved an incident in which the ex-husband/defendant told police that his ex-wife/plaintiff was a lesbian. He also wrote a letter to the territorial commission of the Salvation Army, stating that his ex-wife and another woman were "inappropriately affectionate" and had engaged in "inappropriate physical contact." His letter suggested that this relationship was damaging to the reputation of the Salvation Army. The plaintiff was a member of the local Salvation Army board and was also a faculty member at Mount Union College. Her friend was a Salvation Army major who was in charge of the local Salvation Army office. As a result of the letter, the Salvation Army conducted an investigation to determine whether the two women were in a lesbian relationship.

{¶ 27} In filing an action for defamation, the plaintiff in *Stokes* claimed that the statements and the investigation caused her mental anguish, humiliation, and embarrassment and that she was treated differently by her colleagues, claims that were supported by her trial testimony. This court held that the testimony was sufficient to prove special damages, thus meeting the elements of a prima facie case for libel per quod. In so holding, this court found that plaintiff's damages were the result of the investigation conducted by the Salvation Army. *Stokes,* supra, 111 Ohio App.3d at 185, 675 N.E.2d 1289.

{¶ 28} We find *Stokes* distinguishable from the instant case. Although Wilson testified that he was humiliated and embarrassed, there was no specific evidence that linked his embarrassment to what others said or did or how they reacted. Wilson testified that some people laughed when he was confronted about the truth of the flyers and they learned that he was not a homosexual. However, he could not determine whether they were laughing because they considered the posting of the flyers to be a practical joke or a prank or because they were being insensitive and laughing at him.

{¶ 29} Although we agree that finding one's photo displayed on campus with allegations about one's sexual orientation may be embarrassing, we cannot say that the evidence showed that Wilson was adversely affected in society by these postings, a showing required as proof of special damages. There was no specific evidence that he was threatened with violence or ill will or that he was publicly ridiculed. Wilson testified that he had received several e-mails and phone calls from persons responding to the flyer and claiming to be nonsmoking, gay, white males. There was no testimony as to whether these were genuine or prank calls. However, Wilson stated, "because [he] had also been receiving calls, probably around at least a half dozen and if not more including—of real solicitations but not—but more of the fact of, you know, [they're] looking for a non-smoking guy, white male."

{¶ 30} Wilson also claimed that the communications were derogatory and offensive because he is not a homosexual. However, he testified that being thought to be a homosexual was not the offensive part of the communications. He was offended because the communications were unwanted and involved something that was not true. He testified that he found the e-mails and phone calls annoying. We find that these communications were more inquisitive and annoying than derogatory or offensive.

{¶ 31} We further find that Wilson did not prove that he had suffered a loss of reputation or social standing. Wilson testified that he had and his current girlfriend began dating one week after the flyers were displayed, and thus, his social standing and reputation did not appear to be diminished. Moreover, Wilson continued to attend Case after the flyers were posted. The flyers did not prompt him to transfer to another school or to drop out of school.

{¶ 32} Wilson argues that he also incurred automobile and parking expenses while commuting for nine days. These damages are not the result of the conduct of a person other than the one defamed or the defamer. See *Bigelow*, supra, 138 Ohio St. 574, 21 O.O. 471, 37 N.E.2d 584. Moreover, loss of study time is purely speculative.

{¶ 33} Finally, we find no merit to Wilson's argument that his GPA suffered due to the flyers. A drop in his GPA could be attributed to having a new girlfriend or to spending more time studying for the Medical College Admission Test. Furthermore, Wilson achieved the same GPA the following semester.

{¶ 34} Therefore, we find that special damages were not proven, and therefore, Wilson is unable to maintain an action for libel per quod. A directed verdict in favor of appellees was properly granted on this issue.

## Invasion of Privacy

{¶ 35} Ohio recognizes three actionable types of invasion of privacy claims: (1) the unwarranted appropriation or exploitation of one's personality, (2) the publication of one's private affairs with which the public has no legitimate concern, and (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Davis v. Cleveland,* Cuyahoga App. No. 83665, 2004-Ohio-6621, 2004 WL 2829027, at ¶ 50, citing *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph two of the syllabus.

{¶ 36} In the instant case, Wilson alleges the second type of invasion-of-privacy claim, the publication of his private affairs. He argues that the flyers publicized his private contact information, including his university e-mail address and campus phone number.

{¶ 37} To prevail on such a claim, Wilson must establish that the publication (1) was a public disclosure, (2) disclosed facts concerning his private life, (3) publicized a matter that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities, (4) was intentional, and (5) is not a legitimate concern to the public. *Davis,* Cuyahoga App. No. 83665 at ¶ 52, citing *Patrolman "X" v. Toledo* (1999), 132 Ohio App.3d 374, 396, 725 N.E.2d 291.

{¶ 38} Wilson was unable to establish that the publication of his e-mail address and phone number constituted a disclosure of facts about his private life. "To recover under this theory, the plaintiff must prove the disclosure of a clearly private fact, a matter truly of private concern only." *Pollock v. Rashid* (1996), 117 Ohio App.3d 361, 369, 690 N.E.2d 903.

{¶ 39} Wilson testified that his picture was obtained from the Case website, which is accessible to all students and faculty at the university. He also testified that his e-mail address and phone number are both issued by the university and can be found on the Case Internet data bank, which is also accessible to all students and faculty, and that his e-mail and phone number are published in the university directory. Moreover, Wilson admitted that his phone number was not a private number.

{¶ 40} Therefore, we find that Wilson had no reasonable expectation of privacy involving this information because it was published in various forms obtainable by university students and faculty. The court properly directed a verdict in favor of the appellees on this issue.

## Civil Conspiracy, Punitive Damages, Attorney Fees

{¶ 41} Wilson also alleged claims for civil conspiracy, punitive damages, and attorney fees. An action for civil conspiracy cannot be maintained

unless an underlying unlawful act is committed. *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481, citing *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 195, 26 O.O.2d 359, 193 N.E.2d 280. Additionally, a civil action cannot be maintained simply for punitive damages, and without punitive damages, there can be no award of attorney fees. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 485 N.E.2d 704, 705, citing *Richard v. Hunter* 151 Ohio St. 185, 187, 39 O.O. 24, 85 N.E.2d 109; *Spalding v. Coulson* (1995), 104 Ohio App.3d 62, 78, 661 N.E.2d 197, citing *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737.

{¶ 42} Therefore, because Wilson has not established an underlying unlawful act, an action for civil conspiracy, punitive damages, or attorney fees cannot be maintained.

Conclusion

{¶ 43} We find that the trial court did not err in directing a verdict in favor of appellees, because reasonable minds could only conclude that the evidence did not support an actionable cause for defamation or invasion of privacy.

{¶ 44} Accordingly, the assignments of error are overruled.

Judgment affirmed.

BLACKMON, A.J., and CORRIGAN, J., concur.