OPINION
{¶ 1} Anthony Ninotti, the only remaining plaintiff in this case, appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Kenneth Klein's motion in limine and granted judgment to Klein on Ninotti's defamation claim. For the following reasons, the judgment will be affirmed. *Page 2 
 {¶ 2} This case is before us for the second time, following our remand in Griffis v. Klein, Montgomery App. No. 19740, 2005-Ohio-3699("Griffis I "). In our prior opinion, we set forth the underlying facts as follows:
 {¶ 3} "The Ohio River Road Runners Club (hereinafter `the Club') is a social club for runners. In 2000, plaintiffs-appellants, Mike Griffis and Anthony Ninotti were members of the Club as was defendant-appellee, Ken Klein.
 {¶ 4} "In 2000, Griffis decided to run for president of the Club. He attended a meeting at which nominations were made for the positions of the Club officers as well as the Board of Trustees. Jan Klein — who was then the girlfriend of Ken Klein — won the nomination for president.
 {¶ 5} "After the nominations were made, the matter was presented to the Club for elections during a Club picnic. According to the record, the nominees for all offices were presented as a slate which could be accepted or rejected in its entirety. A group of members who were apparently dissatisfied with the nomination of Jan Klein had prepared ballots which were distributed at the picnic prior to the vote. The ballot listed every candidate on the slate and permitted each voter to cast a vote for individuals. Following the picnic, the Club members rejected the entire slate. Therefore, a special board meeting was held during which the trustees decided to conduct a second election.
 {¶ 6} "Prior to the second election, Klein then sent a two-page letter to Club members in which he campaigned for various members who were running for elected positions. The letter read, in pertinent part, as follows: *Page 3 
 {¶ 7} "`* * * At the annual meeting/club picnic, an unapproved ballot (slate) was circulated by several Griffis supporters including former Vice-President, Kevin Walsh, and trustee, Tony Ninotti. Before these ballots were distributed, most were marked to indicate a vote for their candidates for officers and trustees. This phony ballot was distributed only to select members. It was an attempt to create confusion and mislead the membership. It was prejudicial to the voting process and completely disregarded the rules set out in the bylaws. Unfortunately, their tactic of misdirection and confusion was successful. After counting the official vote, the slate of nominated trustees was not accepted by a vote of 63 to 30. These 63 members, suggesting that they spoke for you, overturned the trustees. * * *
 {¶ 8} "`* * * We support sportsman like conduct. We joined this club to promote running as a healthy and fun activity. The Board of Trustee's monthly meetings have always been open to the general membership. If there had been legitimate concerns, the board meeting was the proper place to address them. This whole issue was not an issue until a candidate, who has no recorded volunteer points in the past 5 years, failed to be elected to the office of president.
 {¶ 9} "`Many of us work endless hours, often behind the scene, to make this club a success. Please don't let the few speak for you. Don't let a disgruntled 3% dictate club policy. Consider the facts. Investigate for yourself. Form your own opinion, and most of all, VOTE.
 {¶ 10} "`* * * We recommend a vote FOR no more than 17 of the following trustees. Many of these individuals give countless hours to build and maintain the quality events you expect. Needless to say, those nominees who actively participated in prejudicial acts towards this club are not listed in this group. Their actions speak for their integrity and in our opinion, *Page 4 
they do not warrant your consideration.'
 {¶ 11} "The letter then set forth a list of nominees along with their history of activities and `volunteer points' within the Club. It then continued on as follows:
 {¶ 12} "`We strongly recommend that you do not vote for those people who clearly showed disregard for the club by their actions. They sought to confuse and do not deserve a leadership position within the Ohio River Road Runners Club. The following names will also be on the ballot: * * * Mike Griffis * * * Tony Ninotti * * * Kevin Walsh * * *.'
 {¶ 13} "Finally, the letter contained a disclaimer at the bottom which stated: `This mailing was prepared without the use of Proprietary club information and was paid for by concerned club members.'
 {¶ 14} "The board subsequently sent a letter to the members disavowing the contents of the Klein letter. A newsletter was also generated by the board stating that Klein's letter was not an official club document.
 {¶ 15} "Griffis, Ninotti and Walsh filed suit against Klein seeking damages for defamation and intentional infliction of emotional distress. Following trial, the jury returned a verdict in favor of Klein. Griffis and Ninotti appeal."
 {¶ 16} Upon review, we affirmed the jury verdict in favor of Klein on Griffis' defamation claim and on Griffis and Ninotti's claims for intentional infliction of emotional distress. However, we reversed the judgment in favor of Klein on Ninotti's defamation claim, stating that the trial court had erred in determining that the letter was protected by qualified privilege and in determining that the letter did not constitute libel per se. We remanded "for further proceedings." *Page 5 
 {¶ 17} On remand, Klein filed a motion in limine, asking the court to determine (1) whether the alleged libelous statements constituted libel per se or libel per quod, and (2) whether Klein had a qualified privilege to make the statements. Klein asserted that both of these issues were questions of law and that no issues to be determined by a jury remained.
 {¶ 18} On June 27, 2007, the trial court granted Klein's motion. The court agreed that both of these issues were questions of law for the court. The court found that Klein was entitled to judgment because he had a defense of qualified privilege and the jury had previously found that no actual malice existed. Alternatively, the trial court found that Klein was entitled to judgment because the letter constituted libel per quod and Ninotti had failed to sufficiently plead special damages.
 {¶ 19} Ninotti appeals, raising two assignments of error.
 II {¶ 20} Ninotti's first assignment of error states:
 {¶ 21} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING DEFENDANT'S MOTION IN LIMINE WHEN A MOTION IN LIMINE IS THE INCORRECT METHOD TO ADDRESS THE ISSUES SET FORTH IN THE MOTION."
 {¶ 22} Ninotti claims that the trial court abused its discretion in granting Klein's motion in limine on the ground that a motion in limine was not the proper vehicle for raising the issues.
 {¶ 23} "[A] decision on a motion in limine is a pretrial, preliminary, anticipatory ruling on the admissibility of evidence." (Citations omitted.) State v. Baker, 170 Ohio App.3d 331, 2006-Ohio-7085,867 N.E.2d 426, ¶ 9. Generally, motions in limine are not used to distill the legal issues remaining for trial. As stated by Ninotti, the narrowing of triable legal issues is *Page 6 
usually resolved through a motion to dismiss or a motion for summary judgment.
 {¶ 24} Klein asserts that the case was "well beyond the time for a Civil Rule 12(B)(6) motion" and a motion for summary judgment was "procedurally improper" because Ninotti was entitled to have facts construed in his favor in deciding the legal issues. Klein, therefore, asserts that the motion in limine was a proper approach for asking the court to resolve limited legal issues. Alternatively, Klein contends that the use of a motion in limine was harmless, because Ninotti cannot demonstrate that he was prejudiced by raising the legal issues in this fashion.
 {¶ 25} In our view, the use of a motion of limine does not warrant reversal of the trial court's judgment. As discussed infra, the trial court was asked to resolve whether Klein's letter was libel per se or libel per quod, a legal issue for the court. This issue was a proper one for the court to resolve prior to any retrial. Klein also believed that the qualified privilege issue was one for the court to resolve and that any remaining facts were to be determined by the court. Although calling the motion a motion in limine may have been a misnomer, any error in raising the issues by a motion in limine was harmless.
 {¶ 26} Parenthetically, we note that Ninotti has also used motions in limine in this manner. Most notably, in July 22, 2002, Ninotti and his co-plaintiffs filed "Plaintiffs' Motion in Limine for an Order Deeming that the Letter Published by Defendants is Libelous Per Se." We find Ninotti's complaint that Klein improperly used the same type of motion to raise the same legal issue (libel per se versus libel per quod) to be disingenuous.
 {¶ 27} The first assignment of error is overruled.
 III {¶ 28} Ninotti's second assignment of error states: *Page 7 
 {¶ 29} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MAKING DECISIONS IN OPPOSITION TO THE DOCTRINE OF LAW ESTABLISHED BY THE APPELLATE COURT"
 {¶ 30} In his second assignment of error, Ninotti claims that the trial court exceeded the scope of our remand in Griffis I when it determined that the letter was libel per quod and that the qualified privilege defense applied. Ninotti interprets Griffis I as reversing the jury verdict regarding Ninotti, "leaving only the amount of damages to be resolved." Because Ninotti's assignment of error hinges on the scope of our remand, a more thorough review of our prior opinion is necessary.
 {¶ 31} In Griffis I, Ninotti (and Griffis) asserted six assignments of error: (1) the trial court erred in denying their motion for judgment notwithstanding the verdict and for a new trial; (2) the trial court erred by rendering a directed verdict on the issue of whether the publication was libel per se; (3) the trial court erred in determining that the letter was protected by the defense of qualified privilege; (4) the trial court erred in rendering a directed verdict against them on their claim of intentional infliction of emotional distress; (5) the trial erred in issuing a jury instruction on freedom of expression; and (6) the trial court erred in admonishing Klein's counsel for their use of an exhibit during closing arguments. We overruled the fourth, fifth, and sixth assignments of error. We overruled the first assignment of error as to Griffis, thus affirming the jury verdict in favor of Klein on Griffis' defamation claim, but sustained the assignment of error as to Ninotti. We also sustained the second and third assignments of error with regard to Ninotti's defamation claim. To better understand our ruling on the first assignment of error, we will first discuss the second and third assignments in greater detail. *Page 8 
 {¶ 32} With regard to whether the letter was libel per se, the trial court had ruled that the letter did not constitute libel per se because it did not accuse Griffis or Ninotti of committing a crime. Although we agreed that the letter did not accuse Griffis or Ninotti of criminal activity, we stated that the trial court employed the wrong analysis for determining whether a publication is libel per se. We stated that "the trial court was required to decide whether the language in the letter was ambiguous and subject to an innocent construction or whether the language was defamatory on its face." Griffis I at ¶ 33. Because the trial court's determination was not based on whether the letter was ambiguous and subj ect to an innocent construction, we concluded that the trial court erroneously determined that the letter was libel per quod.
 {¶ 33} Ninotti notes that we next stated: "Moreover, we conclude that a reasonable person could find that the letter constituted libel per se because it directly accused Ninotti of involvement in the distribution of pre-market election ballots during the Club's election." This statement, however, was not a finding that the letter was libel per se. Rather, it emphasized that a libel per se construction was reasonable and that the trial court needed to make a finding using the proper standard upon remand. We made no comment on whether the letter was subj ect to an innocent construction.
 {¶ 34} In addressing the third assignment of error in Griffis I, we also found that the trial court erred in determining that the qualified privilege defense applied. We noted that Klein had satisfied two elements of the defense — there was an interest to be upheld and the publication was limited in scope — but Griffis and Ninotti had "provided evidence sufficient to bring into question the issue of whether the publication was made in good faith, on the proper occasion or in the proper manner." In other words, we concluded that, viewing the evidence in Griffis and *Page 9 
Ninotti's favor, there were genuine issues of material fact as to whether Klein could satisfy the qualified privilege defense. Thus, the trial court erred in rendering a directed verdict on whether Klein was entitled to qualified privilege, and this matter was remanded for resolution by the finder of fact. (We note that, following our remand, the trial court scheduled a jury trial, not a bench trial.)
 {¶ 35} With these conclusions in mind, we sustained Ninotti's claim that the trial court erred in failing to grant his motion for a directed verdict and for a new trial. We noted that the trial court's erroneous directed verdict on the defense of qualified privilege resulted in an erroneous jury instruction that the jury had to find actual malice in determining liability. We stated: "Had the jury not been required to find actual malice, it might have found Klein liable and then might have decided to award some amount of damages to Ninotti." (Emphasis added.)
 {¶ 36} We did not conclude that Ninotti was entitled to judgment on his defamation claim or to damages as a result of our ruling. Although the jury found that the statements were defamatory as to Ninotti, that finding did not, by itself, determine liability. Rather, when considered in conjunction with our disposition of the second and third assignments of error, it is clear that a remand was necessary for the trial court to determine whether the letter constituted libel per se or libel per quod. Moreover, upon remand, a new trial could be necessary to determine whether the defense of qualified privilege applied if the trial court determined that the letter was libel per se. Whether Ninotti was entitled to damages would depend on the outcome of the trial court's determination on the libel per se issue and on the jury's determination, if necessary, regarding the qualified privilege defense. (The jury had determined that no actual malice was proven. Consequently, the qualified privilege defense could defeat Ninotti's liability *Page 10 
claim.)
 {¶ 37} We therefore turn to the issue at hand, i.e., whether the trial court exceeded the scope of our remand. First, the trial court determined that each of the elements of qualified privilege applied. The trial court concluded that there were "reasonable grounds present for supposing an innocent motive in relation to the element of good faith." It further held that the publication was made on the proper occasion and in the proper manner.
 {¶ 38} We agree with Ninotti that the trial court exceeded its authority when it determined that the qualified privilege defense applied. Although the trial court correctly noted that a court may make such determinations when the facts surrounding the alleged defamatory statement are not in dispute, we held in Griffis I that questions of fact existed as to whether Klein acted in good faith and whether the publication was made on the proper occasion and in the proper manner. We specifically pointed to evidence that Klein "was aware that the Club's Board of Trustees had stated that no communications should be disseminated regarding the election. Despite the Board's ban on election communications, Klein used the Club's member list to obtain member addresses. * * * Further, Klein did not sign the letter and instead sent it out anonymously. The letter included a statement that it was being published by concerned Club members," despite the fact that Klein was the sole author. In short, the issue of qualified privilege could not be decided on remand by the trial court as a matter of law. Instead, the issue should have been submitted to the fact-finder in a subsequent trial.
 {¶ 39} In contrast to the qualified privilege issue, we conclude that the trial court properly ruled on whether the letter was libel per se. It is well-established that the question of whether a publication constitutes libel per se, as opposed to libel per quod, is a question of law, *Page 11 
and it is the sole function of the court to make that determination. E.g., Becker v. Toulin (1956), 165 Ohio St. 549, paragraph one of the syllabus; Wilson v. Harvey, 164 Ohio App.3d 278, 2005-Ohio-5722,842 N.E.2d 83, ¶ 18. We did not expressly remand this issue to be submitted to a jury, see Griffis I, and it would have been error to do so.Becker, supra, at paragraph one of the syllabus. Accordingly, the trial court acted both within its authority and according to our remand when it ruled on whether the letter constituted defamation per se or defamation per quod.
 {¶ 40} Although Ninotti states that this appeal "is not about re-hashing * * * whether libel per se applies" because those issues were "already decided," Ninotti challenges the trial court's determination that the letter did not constitute libel per se.
 {¶ 41} In finding that the letter constituted libel per quod, the trial court stated:
 {¶ 42} "Plaintiff claims that four statements contained in the letter were libel per se. The four statements are as follows[:] 1) that the ballot created and distributed by Plaintiff at the picnic was `unapproved', 2) that the ballot was `phoney,' 3) that the ballot `was distributed only to select members' and 4) that `[b]efore these ballots were distributed, most were marked to indicate a vote for their candidates for officers and trustees.' This Court disagreed with Plaintiffs accessment [sic] and finds that these statements are libel per quod as they are all either statements of opinion or subject to an innocent interpretation. Characterization of the ballot as `unapproved' and `phoney' were previously determined by this Court to be statements of opinion. Even if this Court had not classified these statements to be opinions there was evidence presented indicating that the statements were true. The Plaintiff himself referred to the ballot he was connected with as a `comment card' and the Board of Trustees' ballot as the *Page 12 
`official slate.' A reasonable person could interpret the `comment card' ballot as phoney as it was not the official ballot. Also, Plaintiff agreed at trial that co-plaintiff Michael Griffis was instructed by the then club President to strike out the title `2000 ORRRC Election' of the comment card. This testimony indicates that the comment card ballot was not authorized by the ORRRC, thereby making it `unapproved.'
 {¶ 43} "In regard to the remaining two statements, at trial there was evidence presented that both statements were true statements. Plaintiff could not verify that everyone who attended the ORRRC [picnic] received a ballot. Additionally, testimony was presented by witnesses at trial that they did not receive a ballot even though they were present at the picnic. As Defendant notes in his Motion in Limine selective distribution of election material is a political campaign of any sort is commonplace. Certainly there is an innocent interpretation to the statement that the ballots were distributed to select members. Turning to the second statement that the ballots were marked to indicate a vote is also a true statement that was not challenged at trial. Again, this is a common practice in political campaigns. The Appellate Court concluded that `a reasonable person could find that the letter constituted libel pre se because it directly accused Ninotti of involvement in the distribution of pre-marked election ballots during the Club's election.' However, given that distribution of pre-marked election ballots frequently occurs in campaigns a reasonable person could also determine that the statement had an innocent connotation. The four statements claimed by Plaintiff to be libel per se are all, at the least, ambiguous and subject to an innocent interpretation. Therefore rather than libel per se the four statements challenged by Plaintiff are libel per quod."
 {¶ 44} Ninotti contends that the letter could not be afforded an innocent construction. *Page 13 
He states that Klein sent the letter despite the Board's ban on election communications, that he sent it anonymously, and that he misled club members by implying that it was sent by a group of individuals. Ninotti asserts that the letter unambiguously accused Ninotti of election fraud. We disagree.
 {¶ 45} Although the letter could be construed as an accusation that Ninotti was involved in the distribution of pre-marked election ballots, we agree with the trial court that this is not the only reasonable construction. As noted by the trial court, campaign materials that resemble pre-marked ballots are not uncommon, and the statement that an individual distributed those materials to selected individuals is not, on its face, derogatory. Although the letter asserted Klein's opinion that Ninotti's actions were "an attempt to create confusion and mislead the membership," Ninotti was not accused of criminal conduct (seeGriffis I at ¶ 33) and the actions could be construed as innocuous. Accordingly, the trial court did not err in concluding that Klein's statements were libel per quod.
 {¶ 46} Where the alleged defamation is libel per quod, a plaintiff must plead and prove special damages. Griffis I at ¶ 32; Wilson v.Harvey, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶ 22. In his complaint, Ninotti alleged that the defamatory statements caused injury to his reputation, humiliation, emotional distress, and loss of self-esteem. He sought compensatory and punitive damages. In its June 27, 2007 decision, the trial court concluded that Ninotti's claimed damages "are simply not special damages." It reasoned: "Emotional distress, humiliation, mental anguish and the like are not damages that are measurable by a market value or out of pocket expense."
 {¶ 47} "Special damages are damages of such a nature that they do not follow as a *Page 14 
necessary consequence of the injury complained of." King v. Bogner
(1993), 88 Ohio App.3d 564, 568, 624 N.E.2d 364, citing Gennari v.Andres-Tucker Funeral Home (1986), 21 Ohio St.3d 102, 106,488 N.E.2d 174. Special damages include "an actual, temporal loss of something having economic or pecuniary value." Whiteside v. Williams, Madison App. No. 2006-06-021, 2007-Ohio-1100, ¶ 7; Moore v. P. W. Pub. Co. (1965), 3 Ohio St.2d 183, 190, 209 N.E.2d 412 (stating that particular lost contracts, sales, customers, patients or clients must be alleged to recover special damages). We agree with the trial court that Ninotti's alleged damages did not include "special damages."
 {¶ 48} Because the trial court properly concluded that the defamatory statements were libel per quod and that Ninotti failed to plead special damages, the trial court did not err in finding no triable issues and in granting judgment to Klein on Ninotti's claim for defamation.
 {¶ 49} The second assignment of error is overruled.
 IV {¶ 50} Having overruled the assignments of error, the judgment of the trial court will be AFFIRMED.
GRADY, J. and DONOVAN, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1