[Cite as *Allen v. Dept. of Rehab. & Corr.*, 2015-Ohio-5560.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DWIGHT ALLEN

       Plaintiff

       v.

DEPARTMENT OF REHABILITATION AND CORRECTION

       Defendant

Case No. 2014-00072

Magistrate Robert Van Schoyck

DECISION OF THE MAGISTRATE

{¶1} Plaintiff, an inmate in the custody and control of defendant at the Warren Correctional Institution, brings this action for defamation. The case proceeded to trial both on the merits and on the issue of whether Corrections Officer Jonathan Noren is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.

{¶2} Plaintiff testified that on the morning of Sunday, January 26, 2014, between approximately 7:30 and 8:00 a.m., he left his cell and went downstairs to the dayroom of the housing unit, where he sat down in a chair. According to plaintiff, it was cold that morning, so he put the hood on his jacket up over his head.

{¶3} Plaintiff stated that Corrections Officer Noren, a "relief officer" who was periodically stationed in the housing unit, walked past him and said "take that damn hood off your head." Plaintiff testified that he did not immediately remove the hood, and instead looked up at Noren, who looked back at him and said "I told you to take that damn hood off your head." Plaintiff related that he then "slowly" removed the hood while saying to Noren "you don't have to speak to me like this." According to plaintiff, Noren responded by saying he could talk to plaintiff "any fucking way" he liked and that he ought to spray plaintiff's "bitch ass," at which point Noren got in a stance as if he

were about to administer the spray and ordered plaintiff to get his "bitch ass on the wall." Plaintiff testified that while he stood against the wall, Noren "said a lot of rash things," including calling him an "old black dick-sucking fag," saying it loud enough that all the inmates in the block could have heard. According to plaintiff, the incident lasted a few minutes in total, ending when Noren eventually ordered him to return to his cell and "lock [his] ass down," and indeed he returned to his cell at that time.

{¶4} Plaintiff testified that he has never been subjected to such verbal abuse by a corrections officer at any other time during his 21 years at the prison. Plaintiff stated that he was humiliated by the "fag" remark, and that as he walked back to his cell, he heard inmates snickering and laughing. Plaintiff related that some inmates will no longer associate with him, and that he has been ridiculed, called names, threatened, and afforded less respect by other inmates based upon the remark.

{¶5} Corrections Officer Noren testified that as a relief officer, he was assigned to work in this particular housing unit on occasion, and worked there every Sunday during a three-month period that includes the day in question. Noren stated that he was not acquainted with plaintiff before the incident and does not believe they had ever spoken before.

{¶6} As Noren recalled, after the morning count of inmates concluded, plaintiff came down to the dayroom, sat at a table in front of the officers' desk and put his hood up over his head. Noren explained that prison rules specifically forbid inmates from wearing hoods inside any building on the compound, with the reason being that hoods may enable inmates to hide their identities. According to Noren, corrections officers have been specifically instructed to enforce this rule, and indeed he had issued tickets to inmates for violating the rule.

{¶7} Noren testified that he got up to make rounds around the time that plaintiff sat down and put up his hood, and Noren stated that as he left the area he told plaintiff

to take his hood down. Noren testified that when he finished making rounds and came back to the desk, he observed that plaintiff still had his hood up. Noren stated that after approaching plaintiff again, plaintiff informed him that he was wearing the hood because he was cold. According to Noren, he told plaintiff that prison rules permitted him to wear a knit cap or baseball cap, but that he was not permitted to sit in the dayroom with his hood up. Noren testified that plaintiff "took great exception" with his instructions and refused to comply, and at this point stated: "Just because you got your butthole reamed last night doesn't mean you can come in here and take it out on us."

{¶8} Noren testified that in light of this remark and plaintiff's repeated refusals to comply with his orders to remove the hood, he ordered plaintiff to stand up and put his hands against the wall. According to Noren, plaintiff initially refused to get up from the table, so Noren removed his can of pepper spray from its holster and, holding the can in his hand, but without making any verbal threat to administer the spray, he ordered plaintiff once more to get on the wall. Noren recalled that all the inmates in the dayroom were watching the incident by this time. Noren explained that plaintiff finally complied with his orders only after another inmate, whom Noren identified as a laundry porter, interjected and shouted at plaintiff that he would be sprayed if he did not comply. Noren testified that he then stood next to plaintiff and decided to give him a break by not issuing him a ticket, and instead told plaintiff to gather his belongings and return to his cell, adding that he did not want to see plaintiff the rest of the day. Noren stated that the incident ended at that point, with plaintiff returning to his cell as instructed. According to Noren, at no time during the incident did he utter the homosexual remark alleged by plaintiff.

{¶9} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a

person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "'Slander' refers to spoken defamatory words, while 'libel' refers to written or printed defamatory words." *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. Franklin No. 10AP-565, 2011-Ohio-777, ¶ 8.

{¶10} "To succeed on a defamation claim, a plaintiff must establish: (1) a false statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-902, 2008-Ohio-3691, ¶ 26.

{¶11} "Under Ohio common law, actionable defamation falls into one of two categories: defamation per se or defamation per quod." *Am. Chem. Soc. v. Leadscope, Inc.*, 10th Dist. Franklin No. 08AP-1026, 2010-Ohio-2725, ¶ 49.

{¶12} "In order to be actionable per se, the alleged defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt." *Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 28.

{¶13} "On the other hand, a statement is defamatory per quod if it can reasonably have two meanings, one innocent and one defamatory. Therefore, when the words of a statement are not themselves, or per se, defamatory, but they are susceptible to a defamatory meaning, then they are defamatory per quod. Whether an

unambiguous statement constitutes defamation per se is a question of law." (Citations omitted.) *Woods* at ¶ 29.

{¶14} "When a statement is found to be defamation per se, both damages and actual malice are presumed to exist." *Knowles v. Ohio State Univ.*, 10th Dist. Franklin No. 02AP-527, 2002-Ohio-6962, ¶ 24. "When, however, a statement is only defamatory per quod, a plaintiff must plead and prove special damages." *Am. Chem. Soc.* at ¶ 51.

{¶15} "[P]ublicizing that someone is a homosexual is not libel per se because being a homosexual is not a crime nor is it a disease. Additionally, being a homosexual would not tend to injure a person in his trade or occupation." *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, ¶ 21 (8th Dist.). Rather, "falsely publicizing that someone is a homosexual may be libel per quod, but only if special damages are pled and proven." *Id.* at ¶ 23.

{¶16} "Special damages are damages of such a nature that they do not follow as a necessary consequence of the claimed injury." *Mohican Ents., Inc. v. Aroma Design Group, Inc.*, 10th Dist. Franklin No. 96APE01-26 (Sept. 10, 1996). "Special damages are those direct financial losses resulting from the plaintiff's impaired reputation." *Hampton v. Dispatch Printing Co.*, 10th Dist. Franklin No. 87AP-1084 (Sept. 13, 1988); *Nichols v. Ryder Truck Rental*, 8th Dist. Cuyahoga No. 65376 (June 23, 1994). "Special damages include 'an actual, temporal loss of something having economic or pecuniary value.'" *Griffis v. Klein*, 2nd Dist. Montgomery No. 22285, 2008-Ohio-2239, ¶ 47, quoting *Whiteside v. Williams*, 12th Dist. Madison No. CA2006-06-021, 2007-Ohio-1100, ¶ 7. Special damages may include the loss of "particular contracts, sales, customers, patients or clients." *Moore v. P.W. Publishing Co., Inc.*, 3 Ohio St.2d 183, 190 (1965). "Loss of reputation alone is not enough to make the defamer liable * * * unless it is reflected in some kind of economic or pecuniary loss. So too, lowered

social standing and its purely social consequences are not sufficient." Restatement of the Law 2d, Torts, Section 575, comment b (1977); *see also All Seasons Heating & Air Conditioning v. Brown*, 6th Dist. Lucas No. L-91-190 (May 29, 1992) ("embarrassment and mental anguish" are not special damages for purposes of a defamation claim).

{¶17} Moreover, "[u]nder Ohio law, for a statement to be defamatory, it must be a statement of fact and not of opinion." *Spingola v. Sinclair Media, II, Inc.*, 10th Dist. Franklin No. 06AP-402, 2006-Ohio-6950, ¶ 22. "Ohio courts apply a totality of the circumstances analysis and consider four factors in order to determine whether a statement is a fact or an opinion." *Mehta v. Ohio Univ.*, 10th Dist. Franklin No. 09AP-886, 2011-Ohio-3484, ¶ 29. "More specifically, courts consider 'the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared.'" *Id.*, quoting *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 282 (1995).

{¶18} "There is a long recognized 'distinction between actionable defamation and mere obscenities, insults, and other verbal abuse. Statements which are merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet are not defamatory.'" *Murray v. Tarley*, S.D.Ohio No. C2-01-693, 2002 U.S. Dist. LEXIS 28154 (Feb. 20, 2002), quoting *Beverly Ents., Inc. v. Trump*, 182 F.3d 183 (3rd Cir.1999); *see also* Restatement of the Law 2d, Torts, Section 566, Comment e (1977). "Verbal abuse such as obscenities, vulgarities, insults, epithets, name calling and other rhetorical hyperbole is not in itself actionable and libelous." *Garraway v. Diversified Material Handling*, 975 F.Supp. 1026, 1034 (N.D.Ohio 1997).

{¶19} Upon review of the evidence adduced at trial, the magistrate finds that on the day in question, plaintiff violated prison rules by wearing his hood indoors and refusing direct orders from Corrections Officer Noren both to remove the hood and, later, to stand against the wall. The magistrate finds that a verbal altercation followed

wherein plaintiff and then Noren each in anger made an insulting remark directed at the other which, more likely than not, included language suggestive of homosexuality. Considering the totality of the circumstances, including that Noren's remark was—according to plaintiff—but one of several profane or pejorative words Noren used, that it occurred in the course of an obviously contentious altercation between the men, and that it occurred after plaintiff made an derisive remark about Noren being sodomized, the magistrate finds that Noren's remark did not constitute an actionable factual assertion, and could not have reasonably been understood to be anything more than boorish name-calling.

{¶20} Moreover, the magistrate finds that even if Noren's remark was susceptible to a defamatory meaning, it would not constitute defamation per se inasmuch as it did not import a charge of an indictable offense or a disease, nor would it tend to injure plaintiff in a trade or occupation. The magistrate further finds that a claim of defamation per quod cannot be sustained because plaintiff neither pled nor proved special damages, and, in fact, plaintiff acknowledged on cross-examination that he has not suffered financial harm as a result of anything Noren said.

{¶21} To the extent that plaintiff argued at trial that Noren's actions violated certain prison rules regarding harassment and supervision of inmates (Plaintiff's Exhibits 1 and 2), the magistrate concludes that such allegations alone do not support a claim upon which relief can be granted. Prison rules like those which plaintiff points to are "primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997).

{¶22} Regarding the issue of whether Noren is entitled to civil immunity, "R.C. 2743.02(F) vests the Court of Claims with exclusive jurisdiction to determine whether a

state employee is immune from personal liability in a civil action allowed by R.C. 9.86." *Ries v. Ohio State Univ. Med. Ctr.*, 137 Ohio St.3d 151, 2013-Ohio-4545, ¶ 20.

{¶23} R.C. 9.86 states, in part:

{¶24} "Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶25} For purposes of R.C. 9.86, "[m]alicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term 'reckless' is often used interchangeably with the word 'wanton' and has also been held to be a perverse disregard of a known risk." (Citations omitted.) *Caruso v. State*, 136 Ohio App.3d 616, 620-621 (10th Dist.2000).

{¶26} "An employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment. * * * The act must be so divergent that it severs the employer-employee

relationship." *Elliott v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 93API09-1268 (Feb. 3, 1994).

{¶27} The magistrate finds that the remark in question by Noren occurred during a tense situation in an effort to correct plaintiff's defiance of prison rules, to secure plaintiff's compliance with direct orders which he had stubbornly defied, and to keep control of and maintain the safety and security of the block. The magistrate finds that Noren's overall actions were carried out in fulfillment of his responsibilities, for the benefit of defendant, and that any statements he made, even if inappropriate, were not made with an intent to harm plaintiff and under the circumstances were not so divergent as to sever the employer-employee relationship.

{¶28} Based on the foregoing, the magistrate finds that plaintiff failed to prove his claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant. Further, the magistrate finds that at all times pertinent, Corrections Officer Noren acted within the scope of his state employment and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. It is therefore recommended that the court issue a determination that Noren is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

{¶29} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

*and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Frank S. Carson
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Dwight Allen, #A269-115
P.O. Box 120
Lebanon, Ohio 45036

**Filed March 16, 2015**
**Sent To S.C. Reporter 12/31/15**