[Cite as *Rarden v. Rarden*, 2013-Ohio-4985.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| TIMOTHY H. RARDEN, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-06-054 |
| | : | O P I N I O N |
| - vs - | | 11/12/2013 |
| | : | |
| AMY K. RARDEN, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 12DR35757

Robert D. Todd, 8401 Claude Thomas Road, Suite 38, Franklin, Ohio 45005, for plaintiff-appellee

John D. Smith Co., LPA, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for defendant-appellant

Jeffrey T. Kirby, 4 Sycamore Drive, P.O. Box 638, Springboro, Ohio 45066, guardian ad litem

**RINGLAND, P.J.**

{¶ 1}  Defendant-appellant, Amy K. Rarden ("Mother"), appeals a decision of the

Warren County Common Pleas Court, Domestic Relations Division, granting a divorce and

allocating parenting rights between her and plaintiff-appellee, Timothy H. Rarden ("Father").[1] For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2} Mother and Father were married on September 29, 2000 and have one child: Liam, born in 2004. The parties resided together in the Middletown/Franklin, Ohio area for approximately 11 years, living for some extended period of time with Father's parents. During this time, Liam attended the Goddard School for preschool, Carlisle for kindergarten, and Middletown Preparatory and Fitness Academy ("Middletown Prep") for first grade.

{¶ 3} In April 2011, Mother acquired a degree in sonography and accepted a job at Christ Hospital in Cincinnati, Ohio.[2] When Mother accepted the job, she knew she would soon be transferred to Kentucky and, in July 2011, Mother's employer transferred her to Burlington, Kentucky. From July until October of 2011, Mother lived in the Middletown/Franklin area and commuted approximately one hour to and from Burlington. However, in October, Mother moved to Burlington fulltime with the help of Father's parents. Liam then began spending the majority of his time with Father's parents while Mother stayed in Burlington and Father worked. In July 2012, Mother moved Liam to Burlington with her and enrolled him in the Boone County, Kentucky school district.

{¶ 4} In August 2012, Father filed for divorce and Mother filed an answer and counterclaim for divorce. Upon the divorce filings, Mother was granted temporary custody of Liam and Father was granted parenting time every Wednesday overnight and every other weekend from Friday evening until Monday evening. Though both parties sought to be named residential parent and legal custodian of Liam, they jointly filed a stipulation which laid out a parenting schedule for the to-be-determined nonresidential parent. Essentially, the

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

2. A sonographer is a specialist in the use of ultrasound.

parties agreed that the nonresidential parent would have parenting time every Wednesday and alternating weekends.

{¶ 5} On March 26, 2013, the parties appeared for a final divorce hearing on the sole issues of custody, daycare, and child support. Testimony was given by Mother, Father, Father's sister, and others. A guardian ad litem's report was also submitted for the trial court's review. At the conclusion of the hearing, the trial court made the following order:

> I'm going to allow Mother to have custody to the extent that she intends to move back to the Middletown/Franklin area. If she does not move back to the Middletown/Franklin area, then at that point in time I am going to determine that it is in the best interests of the child that Father have custody of Liam. * * * [I]f [Mother] moves back here, the Court believes that she has been the primary caregiver of this particular child.

On May 20, 2013, the trial court filed its Judgment Entry and Decree of Divorce, which journalized the trial court's previous order:

> Effective March 23, 2013, the child shall reside with Mother and she is named the residential parent and legal custodian. Effective September 1, 2013, Mother shall move to the Middletown/Franklin area. If Mother fails to move to the Middletown/Franklin area, Father shall be named the residential parent and legal custodian.

The trial court then enumerated two different parenting plans dependent upon Mother's choice of moving from Burlington back to the Middletown/Franklin area. If Mother moved back to Middletown/Franklin, she would retain custody of Liam and the parties would equally divide parenting time. However, if Mother refused to move back to Middletown/Franklin, then Father would be granted custody and Mother would be granted parenting time based upon the parties' stipulation. The trial court further ordered that Liam must attend Middletown Prep beginning September 1, 2013 for the 2013/2014 school year.

{¶ 6} From the trial court's order requiring Liam to attend Middletown Prep, requiring Mother to relocate to the Middletown/Franklin area in order to retain custody of Liam, and

granting Father equal parenting time, Mother appeals, raising a single assignment of error:

{¶ 7} THE TRIAL COURT ERRED IN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES.

{¶ 8} Within her sole assignment of error, Mother raises two arguments. First, Mother argues the trial court abused its discretion in requiring her to move back to the Middletown/Franklin area and enroll Liam in Middletown Prep. Second, Mother contends the trial court abused its discretion by ignoring the parties' stipulation and giving Father equal parenting time with Liam if Mother moves back to Ohio and remains the residential parent and legal custodian.

{¶ 9} A trial court's decision regarding custody will not be disturbed on appeal absent an abuse of discretion. *Valentine v. Valentine*, 12th Dist. Butler No. CA2010-12-320, 2012-Ohio-426, ¶ 10, citing *Hetterich v. Hetterich*, 12th Dist. Butler No. CA2000-06-122, 2001 WL 337236, *4 (Apr. 9, 2001). An abuse of discretion is more than an error in judgment or law and connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing a trial court's decision, the reviewing court should be "guided by the presumption that the trial court's findings were indeed correct." *Id.*, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶ 10} When applying an abuse of discretion standard, the reviewing court is "not free merely to substitute its judgment for that of the trial court." *In re L.S.*, 152 Ohio App.3d 500, 2003-Ohio-2045, ¶ 12 (8th Dist.). "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Id.* This is especially true in cases involving child custody, "since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." *Id.*; *see also Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004-Ohio-3912, ¶ 6 ("[T]he

power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children"). Thus, the "discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Kenney* at ¶ 6; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

## REQUIREMENT TO MOVE

{¶ 11} Mother first asserts that the trial court abused its discretion by conditioning her status as the sole residential parent and legal custodian of Liam on her relocation to the Middletown/Franklin area and her enrolling Liam in Middletown Prep. Specifically, Mother argues that the trial court erred by erroneously overemphasizing Mother's out-of-state relocation, improperly conditioning its award of custody to Mother on her relocation, and ignoring overwhelming evidence that weighs in favor of Liam staying in Kentucky.

{¶ 12} Pursuant to R.C. 3109.04, if neither parent requests shared parenting, then the trial court, in a manner consistent with the best interests of the children:

> shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, * * * the right of the parent who is not the residential parent to have continuing contact with the children.

R.C. 3109.04(A)(1); *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 11; *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 8. In determining the best interests of the child, the trial court must consider all relevant factors including, but not limited to, the enumerated factors in R.C. 3109.04(F)(1). These factors include the "child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest," the "child's adjustment to the child's home, school, and community," and "[w]hether either parent has established a

residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1)(c), (d), and (j).

{¶ 13} Although R.C. 3109.04(F)(1)(j) requires a trial court to consider whether a parent has established a residence outside of Ohio, "nonresidence alone should not deprive a parent of custody." *Ornelas* at ¶ 13, citing *Marshall v. Marshall*, 117 Ohio App.3d 182, 187 (3d Dist.1997). Pursuant to the Eighth Appellate District:

> The overwhelming weight of authority is to the effect that a nonresident or one who intends to become a nonresident will not be deprived of the right to custody of a child merely because of his nonresidence; and that if the best interests of the child will be promoted, custody will be awarded to nonresidents, the same as it would be to residents; one intending to become a nonresident will be permitted to remove the child to his or her new residence.

*In re Marriage of Barber*, 8 Ohio App.3d 372, 375 (8th Dist.1983); *Ornelas* at ¶ 13.

{¶ 14} Upon a thorough review of the record, we do not find it was an abuse of discretion for the trial court to condition Mother's designation as residential parent upon her return to the Middletown/Franklin area and her enrollment of Liam in Middletown Prep. Although one of the best interest factors for a custody determination is whether a parent has established a residence outside of the state, the evidence shows that the other best interest factors lean in favor of the trial court's decision. The guardian ad litem's report revealed that Liam loves both his parents and his paternal grandparents and has close relationships with his cousins and aunt as well. In fact, Liam is able to spend time after school with his aunt, cousins, and grandparents while Father is at work. This assistance comes at no financial cost to either Mother or Father. On the other hand, Liam has no relatives in the Burlington/Florence, Kentucky area and is required to go to daycare before and after school until Mother finishes work. Mother pays approximately $75 per week for Liam's daycare.

{¶ 15} The trial court further found that Mother was the primary caregiver of Liam for the majority of his life. While Father was the financial provider of the family, Mother stayed

home and raised Liam. When Mother was unavailable, Liam's care often fell to Father's parents. Nevertheless, it was Father who enrolled Liam in extracurricular activities in Middletown including baseball and soccer. Father also attended almost every game and practice while Mother attended almost none. In addition, Mother has failed to enroll Liam in any extracurricular activities since she moved him to Kentucky in July 2012.

{¶ 16} Furthermore, the trial court focused not so much on Mother's nonresidency, but on Mother's choice to relocate Liam without any discussion with Father. The trial court found Mother's unilateral decision to "move to Kentucky without making any attempts whatsoever of maintaining a continuing relationship" between Liam and his Father, grandparents, and other relatives to be a "really, really poor decision." Therefore, the trial court found that, in order for Liam to maintain relationships with his Father, grandparents, and other relatives, it was in Liam's best interest to move back to the Middletown/Franklin area.

{¶ 17} We agree with the trial court that the factors discussed above establish that it is in the best interest of Liam to live in the Middletown/Franklin area where he has a large support system and can participate in extracurricular activities. We also agree with the trial court that Mother has been the primary caregiver of Liam and, if possible, should be designated the residential parent and legal custodian so long as she is able to return to the Middletown/Franklin area. Therefore, we find that the trial court did not abuse its discretion in conditioning Mother's status as residential parent and legal custodian upon her return to Ohio. The trial court did not deny Mother custody merely because she is a nonresident or will become a nonresident, but based its decision on a review of all of the best interest factors of R.C. 3109.04(F)(1).

**EQUAL PARENTING TIME**

{¶ 18} Mother additionally argues the trial court abused its discretion by ignoring the parties' stipulation regarding visitation by the nonresidential parent and granting Father equal

parenting time if Mother moved back to the Middletown/Franklin area.

{¶ 19} On March 25, 2013, the parties entered the following stipulation regarding the nonresidential parent's parenting time:

> During the school year, the parent that does not obtain custody shall have Wednesday parenting time from 6:00-8:00 p.m., with the non-custodial parent driving to the custodial parent's residence to pick up the minor child, exercise the parenting time locally, *i.e.,* dinner, movie, bowling, etc., and then returning the child to the custodial parent's residence. Also, during the school year, the non-custodial parent shall have the minor child every other weekend from Friday at 6:30 p.m. until Sunday at 6:30 p.m. Transportation shall be provided by the parent who is to receive the minor child.

A similar provision was stipulated to regarding parenting time in the summer.

{¶ 20} Yet, in its May 20, 2013 divorce decree, the trial court ordered that, if Mother is named the residential parent (by moving back to the Middletown/Franklin area), Father shall be entitled to "fifty-fifty time allocation" with Mother having parenting time Monday through Wednesday and Father having visitation Wednesday through Friday with alternating weekend visitation. However, if Father is named the residential parent, Mother shall only be entitled to the Wednesdays and every other weekend parenting time provided by the parties in their March 25, 2013 stipulation. Because the trial court did not apply the parties' stipulation as to the nonresidential parent's parenting time if Mother is named residential parent, Mother argues the trial court abused its discretion.

{¶ 21} A stipulation is "a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue" or to "narrow the range of issues to be litigated." *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, ¶ 12 (8th Dist.), citing *In re All Kelley & Ferraro Asbestos Cases,* 8th Dist. Cuyahoga Nos. 83348 and 83628, 2005-Ohio-2608, ¶ 10, and *State v. Small,* 162 Ohio App.3d 375, 2005-Ohio-3813, ¶ 35 (10th Dist.). A stipulation, "once entered

into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in the case." *Whitehall ex rel. Fennessy v. Bambi Motel*, 131 Ohio App.3d 734, 742 (10th Dist.1998). "If the parties wish to agree or to stipulate to various facts or procedures, * * * courts should be permitted to accept freely entered into agreements or stipulations unless such agreements or stipulations are not in the child's best interest." *Melvin v. Martin*, 4th Dist. Lawrence No. 05CA44, 2006-Ohio-5473, ¶ 13.

{¶ 22} At the conclusion of the March 26, 2013 divorce hearing, the trial court orally addressed the issue of parenting time, holding that it would be in the best interest of Liam to live in the Middletown/Franklin area with Mother as residential parent and legal custodian "to the extent that she intends to move back to the Middletown/Franklin area." If Mother did choose to return to the Middletown/Franklin area, the trial court found it to be in Liam's best interest, due to the "special relationship" between Father and Liam, that Father receive equal parenting time. The following exchange then took place:

> THE COURT: So [Mother] will have…[Mother] will have custody but you folks have agreed to, that I recall, you agreed to an equal parenting time schedule?
>
> FATHER'S ATTORNEY: No, no we did not…no we did not.
>
> MOTHER'S ATTORNEY: No, we did not.
>
> THE COURT: Maybe I miss…maybe I…ok. Did you, did you provide for that in your Stipulations?
>
> FATHER'S ATTORNEY: We did not Your Honor. It was part of the Guardian's report.
>
> THE COURT: Ok. All right. Ok. Again, the Court then is going to order then it will be an equal parenting time situation when [Mother], assuming that she moves back, and the Court will allow them to initially try to work out how they're going to do that, whether that's going to be a Monday/Tuesday, Wednesday/Thursday, alternate weekends, or it's going to be a week-to-week schedule. I'll let them initially work that out.

{¶ 23} Based upon our review of the record, the trial court was aware of the existence of a stipulation regarding parenting time but was incorrect as to what the stipulation stated.[3] Regardless of the trial court's knowledge of the details of the stipulation, it found that equal parenting time was in the best interest of Liam and, therefore, more appropriate than any other schedule. Thus, the trial court essentially refused to accept the parties' parenting time stipulation based upon what was in the best interest of Liam. As it is "generally conceded that the parties cannot by stipulation interfere with the court's discharge of its duty to consider the best interest of the child in rendering its judgment," we find the trial court did not abuse its discretion in refusing to accept the parties' stipulation regarding parenting time of the nonresidential parent. *Willis v. Willis*, 8th Dist. Cuyahoga No. 70937, 1997 WL 272377, *3 (May 22, 1997).

{¶ 24} Having found no merit to Wife's arguments, we find the trial court did not err in allocating parental rights and responsibilities between the parties. Accordingly, Wife's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

---

3. At the beginning of the hearing, the trial court stated: "Counsel, as I read these Stipulations * * * you've agreed to everything except the custody, daycare, [and] child support…[.]"