[Cite as *Smallwood v. Smallwood*, 2018-Ohio-1008.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| LORI M. SMALLWOOD, | : | |
| Plaintiff-Appellant, | : | CASE NO.  CA2017-03-030 |
| | : | O P I N I O N |
| - vs - | | 3/19/2018 |
| | : | |
| KENNETH RYAN SMALLWOOD, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR15-10-0917

The Lampe Law Office, M. Lynn Lampe, Adam C. Gedling, 9277 Centre Pointe Drive, Suite 100, West Chester, Ohio 45069, for plaintiff-appellant

Kenneth Ryan Smallwood, 1813 Galway Circle, Middletown, Ohio 45042, defendant-appellee, pro se

**RINGLAND, J.**

{¶ 1} Appellant, Lori Smallwood ("Wife"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, following her divorce from appellee, Kenneth Smallwood ("Husband"). For the reasons detailed below, we affirm in part, reverse in part, and remand this matter to the trial court.

{¶ 2} Husband and Wife were married on February 18, 2006 and have two children,

M.S., born on December 12, 2006, and L.S., born on July 22, 2010.  In 2015, M.S. was diagnosed with cancer and there are major medical bills associated with her care.  The parties have PNC bank accounts that they agree are largely used for those expenses.

{¶ 3}  On October 29, 2015, Wife filed a complaint for divorce and the matter proceeded to final hearings held on May 27, 2016 and July 26, 2016.  The parties introduced testimony with respect to parenting arrangements and allocation of marital property and debts.  The parties generally agreed to many issues with respect to property valuations, however there were concerns about Husband's Fidelity IRA.

{¶ 4}  The record reflects that Husband's Fidelity IRA account was valued at $54,919.50 on December 31, 2015.  Though there was a restraining order prohibiting the depletion of assets of the Fidelity IRA account, there was evidence that Husband had been withdrawing funds from the account prior to the May 27, 2016 hearing.

{¶ 5}  The Fidelity IRA statements were entered into evidence, which reflect the distributions that Husband was taking from the account and also the investment losses or gains that occurred during the relevant timeframe.  As of January 31, 2016, the Fidelity IRA was valued at $45,694.65, which reflects the fact that Husband withdrew $5,000 in cash, an additional $1,250 in taxes as a result of the distribution, and a change of investment value in the form of a $2,974.85 loss.

{¶ 6}  The statements also show that Husband took a $1,250 deduction in February, a $11,583.33 deduction in March, and a $8,000 deduction in April.  Factoring in the additional losses and gains sustained during the relevant timeframe shows that the Fidelity IRA had a value of $27,444.44 on April 30, 2016.

{¶ 7}  At the conclusion of the May 27 hearing, the case was continued in progress.  On July 26, 2016, the parties introduced additional testimony and entered into an agreement as to the division of household goods and furnishings.  Wife, however, raised the issue of

Husband's deductions from the Fidelity IRA:

> [Wife's counsel]: We – we wanna [sic] put one thing on the record, Your Honor, though on that because my client – Uh, based on the testimony, most of the property division when you got to trial was stipulated in terms of the real estate stipulation; the vehicle value; –
>
> [Husband's counsel]: Correct.
>
> [Wife's counsel]: – retirement values; uh, tracing and non-marital property versus marital, and as well as the credit card debts. Uh, but the – the – my client's position on the household goods has always been conditioned on this assumption that Mr. Smallwood had not cashed out any more of his retirement plan after the hearing date. And we've not been able to get confirmation from Fidelity that that happened, so I – Counsel has assured me that hasn't, but I would like to have that on the record.
>
> [Husband's counsel]: My client has indicated that he has not cashed out or withdrawn any further sums from the Fidelity account since the final hearing, that's correct. In fact, I believe Fidelity was – prior to the final hearing and during the pendency of the case, they were given a copy of the Restraining Order by [defense counsel] and they froze the account. So, uh, so no problem.
>
> * * *
>
> [Wife's counsel]: There was cash – There were cash-outs by Mr. Smallwood up until the trial date that we found out about.
>
> [Husband's counsel]: Correct.
>
> [Wife's counsel]: And that was put into evidence.
>
> [Trial court]: Uh-huh.
>
> [Wife's counsel]: And, uh, my client is amenable and agreeable to the household goods settlement that we negotiated in the hallway, but she wants to be clear that that's – that her agreement was based on an assumption that that Fidelity account is still intact.

Wife raised the issue of the Fidelity IRA account later during the hearing, presumably after

having acquired additional information as to the account.

> [Wife's counsel]: I have one other small issue I need to address,

- 3 -

Judge.

[Trial court]: Okay.

[Wife's counsel]: So I had subpoenaed the Fidelity records after Court last time because I wasn't – because I got the, uh, – faxed them over.  After I got the records from Fidelity, you heard testimony that we were able to see that Mr. Smallwood was taking withdrawals out of the Fidelity account.  So we came in Court in May, he had acknowledged that there were no other withdrawals taken out of the account.  I just got the records opened this morning and there was another $5,000 withdrawal out of the Fidelity account in May, so the balance is now down by another $5,000.

[Trial court]: Is that correct?

[Husband's counsel]: According to the records, the $5,000 withdrawal was on May 4th, prior to the final hearing.  I don't recall his exact testimony.  I know he said he wasn't sure, but we – at the time of the final hearing, we thought there was 27,000 left.  There apparently is 22,000 let [sic].  The bottom line to that is that may be accurate, that he withdrew another 5,000.  I don't recall his testimony, but it certainly occurred.  He did do it, it did occur prior to the final hearing.  In the overall picture, I realize that it matters, but at the same time, given the assets that we have, uh, it – it's money that can be accounted for with other assets.  So –

[Wife's counsel]: Actually it's not possible now.  I sent a settlement proposal over on May the – After the trial.  I did a summary of assets and debts based on all stipulations and based on the withdrawals that had already been made, uh, from the Fidelity account.  There was 54,919 when the case started.

{¶ 8}  Following the hearing, the trial court divided and allocated the parties' property and issued its final judgment entry.  Wife now appeals the decision of the trial court, raising five assignments of error for review.

{¶ 9}  Assignment of Error No. 1:

{¶ 10}  THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO VALUE HUSBAND'S FIDELITY IRA PURSUANT TO PARTIES' [sic] STIPULATIONS.

{¶ 11}  In her first assignment of error, Wife argues the trial court erred by improperly

- 4 -

valuing Husband's Fidelity IRA contrary to the parties' stipulations. Wife's assignment of error is without merit.

{¶ 12} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 8. Initially, pursuant to R.C. 3105.171(B), "the court shall * * * determine what constitutes marital property and what constitutes separate property." An appellate court reviews the trial court's classification of property or debt as marital or separate under the manifest weight of the evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8.

{¶ 13} After classifying the property as separate or marital, "the court shall disburse a spouse's separate property to that spouse" and divide the marital property equally. R.C. 3105.171(C)(1) and (D). However, if the court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. R.C. 3105.171(C)(1); *Warman v. Warman*, 12th Dist. Butler No. CA2016-08-170, 2017-Ohio-7462, ¶ 16. The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. To find abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Warman* at ¶ 16.

{¶ 14} In the present case, Husband had a Fidelity IRA. In Wife's exhibit 12A, the value of the IRA was estimated at $55,000. Husband agreed and testified that the value of the IRA was about $55,000. Wife testified that the value of the IRA was $54,919. Exhibit 4C reflects the account value as $54,919.50 on December 31, 2015.

{¶ 15} Wife argues that the trial court erred by using the parties' "stipulation" to value the account at $54,919.50. We find Wife's argument to be without merit.

{¶ 16} As an initial matter, we disagree with Wife's position that the parties had a binding stipulation as to the value of the Fidelity IRA. A stipulation is "a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue" or to "narrow the range of issues to be litigated." *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 21. Once a stipulation is entered into, filed, and accepted by the court, it is binding upon the parties as "a fact deemed adjudicated for purposes of determining the remaining issues in the case." *Roetting v. Roetting*, 12th Dist. Butler No. CA2014-06-128, 2015-Ohio-2461, ¶ 24.

{¶ 17} The record reflects that the parties were in general agreement as to the value of the Fidelity IRA, however, there is no evidence that the parties entered into a binding stipulation that was accepted by the trial court. Though the parties valued the Fidelity IRA similarly, Exhibit 12A plainly states that the $55,000 valuation was an estimation, and Husband's testimony valued such similarly. The trial court, in making its determination, chose to value the Fidelity IRA according to actual Fidelity IRA statements, rather than an estimation.

{¶ 18} Similarly, we find no error in the trial court's decision to use the January 2016 balance, as opposed to the December 31, 2015 balance in its decision calculating the value of the Fidelity IRA. As the trial court noted in its decision, the Fidelity IRA account had sustained market losses, and the trial court took that information into account. Such a decision is not "unreasonable, arbitrary, or unconscionable" for purposes of showing an abuse of discretion.

{¶ 19} In sum, the trial court ultimately calculated the marital amount in the Fidelity IRA at $51,944.65. This value represents the total value of the account in January 2016 – $45,694.65 – plus $6,250 that the trial court found Husband improperly withdrew. Accordingly, we find the trial court did not abuse its discretion by setting the value of the IRA

at $51,944.65. Wife's first assignment of error is without merit.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ABUSED ITS DISCRETION BY INCLUDING WIFE'S BANK ACCOUNT TWICE WHEN PERFORMING AN EQUALIZATION OF THE ASSETS AND ALSO BY DEFINING THESE FUNDS AS MARITAL.

{¶ 22} In her second assignment of error, Wife argues the trial court erred by including the same bank account asset twice in performing the equalization calculation. Wife also argues the trial court erred in declaring these accounts to be marital property. We sustain Wife's argument in part.

{¶ 23} Again, property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Smith*, 2017-Ohio-7463 at ¶ 8. The issue here concerns Wife's PNC accounts. We again disagree with Wife's contention that there was a valid and binding stipulation in the record. However, as in the previous instance, the parties do agree that the money used to pay for M.S.'s medical care should not be considered a marital asset.

{¶ 24} A review of the accompanying documents and testimony reveals the following:

> PNC Account 3862: [M.S.] Medical Spending Account is a checking account that can be drawn off.
>
> PNC Account 3889: [M.S.] Medical Reserve Account is a short term saving account that Wife uses as an intermediary account.
>
> PNC Account 3897: This fund is associated with a "virtual wallet" and contained $106,933.01, which constitutes the bulk of the funds used for M.S.'s care.

{¶ 25} Because the parties agreed that M.S. will have substantial future medical costs and there was nonmarital money to pay for those costs, the following discussion was held on the record:

> [Trial court]: Can we get an agreement on the nature of that

- 7 -

medical fund? Because it's quite large. If it's come from other sources specifically for her medical bills, I'm going – I've not had this come up before, but I would treat it – I would not treat this as marital retained by Wife, I wouldn't think.

[Husband's counsel]: No. We have no objection to the account being maintained for the benefit of [M.S.] She's gonna [sic] have expenses and needs, medical, a lot of things. No objection to that being maintained, no objection to Mrs. Smallwood, uh, being the person primarily responsible to manage the account, with the understanding there would be –

[Trial court]: An accounting.

[Husband's counsel]: Quarterly statements are fine. It doesn't have to be monthly, –

[Wife's counsel]: Quarterly.

[Husband's counsel]: – but quarterly statements.

[Trial court]: Quarterly, okay.

[Wife's counsel]: Okay.

[Husband's counsel]: But it should be maintained for the benefit of the child.

[Trial court]: Okay.

[Husband's counsel]: Otherwise, the parties could get into tax trouble.

[Trial court]: Sure.

{¶ 26} The confusion arises here because Wife comingled a small amount of marital funds in this account. The testimony is that Wife had PNC accounts and Wife utilized a feature termed a "virtual wallet." As explained by Wife:

It's a virtual wallet that PNC has. So you get a checking account with it, a reserve account and then a savings account. And in the savings account – I've had, uh, a couple of these. I like it because inside the savings, you can make sub accounts and – or they're known as wish lists, and you can start saving for a particular amount of money to start saving. So I have always used that account to keep different accounts in there. So I've always kept [M.S.] and [L.S.'s] account in there; I have kept our

HOA account in there, where I have made sure that the money is in there to pay our HOA; uh, I keep money in there to pay for our hair; uh –

{¶ 27} Exhibit 12A provides a summary of the funds included in PNC Account 3897:

| 2000 Honda | $2,920.77 | "Used to purchase 2016 Honda Odyssey" |
|---|---|---|
| Settlement—Justice | $462.17 | "Lori's money for kids clothes" |
| Tax Prep | $200.00 | "Money set back to pay for 2015 taxes" |
| Hair | $73.00 | "Lori and [L.S.'s] money" |
| HOA | $161.00 | "Will transfer $125 to be HOA by March 31, 2016" |
| Interest | $64.07 | "This is [M.S.'s] money" |
| [L.S.] Savings | $250.00 | "[L.S.'s] money" |
| [M.S.] Savings | $250.00 | "[M.S.'s] money" |
| [M.S.] Birthday | $1,010.00 | "[M.S.'s] money" |
| [M.S.] Medical | $100,400.00 | "[M.S.'s] money" |
| Rainy Day | $0.00 | |
| Vacation | $1,142.00 | "Lori's money for vacation" |
| Christmas | $0.00 | |

As such, while the vast majority of the money maintained in PNC Account 3897 is reserved solely for M.S.'s medical care, Wife also has other money in that account, which she is able to segregate in the "virtual wallet."

{¶ 28} In the present case, the trial court included a recapitulation index in its judgment entry. The index lists the marital component of the three PNC accounts as $2,102.24 and includes that amount in line 3 of its recapitulation index. However, the same marital component figure of the PNC Account 3897 is also included in line 12.

{¶ 29} Based on our review, we find that this matter should be reversed and remanded. The trial court counted $2,102.24 twice in its recapitulation index, therefore impacting the accuracy of the recapitulation index. The trial court's decision twice accounted for those funds and this matter must be remanded for proper resolution. On remand, the trial court should account for those funds once, instead of twice, as it did in lines 3 and 12 of the

recapitulation index. As a result, we sustain Wife's argument as to the double-counting.

{¶ 30} However, we find the trial court's decision classifying $2,102.24 of PNC Account 3897 as marital property was supported by the manifest weight of the evidence. Here, the record supports the finding that the trial court used the following amounts to justify its finding of $2,102.24 in marital assets:

| Settlement—Justice | $462.17 | "Lori's money for kids clothes" |
| Tax Prep | $200.00 | "Money set back to pay for 2015 taxes" |
| Hair | $73.00 | "Lori and [L.S.'s] money" |
| HOA | $161.00 | "Will transfer $125 to be HOA by March 31, 2016" |
| Interest[1] | $64.07 | "This is [M.S.'s] money" |
| Vacation | $1,142.00 | "Lori's money for vacation" |

{¶ 31} Though Wife claims otherwise, these assets are clearly not reserved for M.S.'s medical expenses. Those funds were used to pay for personal expenses like vacations, HOA fees, and hair appointments. As a result, we find the trial court's decision to classify $2,102.24 of PNC Account 3897 as marital property is supported by the manifest weight of the evidence.

{¶ 32} As a result, we sustain Wife's second assignment of error as to the double-counting. In all other respects, Wife's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED IN FAILING TO ADOPT THE STIPULATIONS OF THE PARTIES CONCERNING THE USAGE OF THE MEDICAL ACCOUNT ESTABLISHED FOR THE PARTIES' DAUGHTER.

{¶ 35} In her third assignment of error, Wife argues the trial court abused its

---

1. Wife testified that she takes the interest earned from the money in the account and places it in a separate interest account.

discretion "when it failed to adopt the stipulation of the parties concerning the maintenance of an account held for the benefit of the parties' child and instead ordered more restrictions than the parties intended and agreed to." Wife's argument is without merit.

{¶ 36} In the present case, the trial court ordered:

> PNC Accounts #3862, #3889, and #3897: The parties stipulate that these are non-marital accounts for medical and other expenses related to [M.S.'s] illness. However, a review of the summary (with no underlying documentation) reveals that Wife has commingled at least one of these accounts with funds not related to [M.S.'s] illness, and uses the account for non-medical purposes, such as tax preparation, haircuts, and payment of the homeowner's association fees related to the residence.
>
> Based on Wife's testimony, the Court finds that $2,102.24 of the #3897 account is used for nonmedical purposes (i.e.: Justice settlement, funds for tax prep, HOA fees, "Lori's money for kids clothes, hair expenses, and vacation). [sic]
>
> The Court finds a marital value in the amount of $2,102.24, which shall be retained by Wife as an offset against marital assets retained by Husband. Wife shall retain these accounts for the benefit of the children.
>
> Wife shall immediately discontinue the use of these accounts for HOA fees, haircuts, vacation funds, and all other non-medical uses. Wife has her own account to use for this purpose. She shall provide full quarterly statements for all three (3) accounts, including subaccounts and transaction, to Husband within five (5) days of receipt.

{¶ 37} Again, we disagree with Wife's assertion that the trial court was bound by any alleged binding stipulation, as there is no record that the trial court accepted any such stipulation. Though the parties were in general agreement as to the nature of the PNC accounts, i.e., medical funds for M.S., the evidence directly contradicts Wife's assertion. As previously addressed, Wife used a small, separate, portion of the money contained in PNC Account 3897 for personal expenses unrelated to M.S.'s medical care. As correctly noted by the trial court, Wife has her own accounts that she may use for nonmedical purposes. The large amount of money in the PNC accounts was for M.S.'s medical expenses, and the trial

court specifically excluded that money from the equitable division of property. As a result, we find the trial court did not abuse its discretion by ordering Wife to discontinue use of PNC accounts for any personal expenses. Wife's third assignment of error is without merit.

{¶ 38} Assignment of Error No. 4:

{¶ 39} THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO INCLUDE THE ENTIRE STIPULATION OF HUSBAND AND WIFE REGARDING THE DIVISION OF HOUSEHOLD GOODS AND FURNISHINGS.

{¶ 40} In her fourth assignment of error, Wife claims the trial court erred in its decision with respect to the parties' stipulation regarding the household goods and furnishings. Wife's assignment of error is sustained.

{¶ 41} The trial court's entry reflects that it accepted the parties' stipulation as to the division of household goods and furnishings, but declined to note that the agreement was conditioned upon Husband not making additional withdrawals from the Fidelity IRA. As previously noted, Wife stated that she agreed to the parties' division of household goods and furnishings, but expressly conditioned her agreement on Husband's word that there had been no further withdrawals from the Fidelity IRA account.

{¶ 42} Upon review of the record, we find that this matter must be remanded for clarification. Here, the trial court relied on the parties' stipulation as to the division of household goods and furnishings, but did not address the conditional nature of that agreement. The evidence at the July 26, 2016 hearing established that Husband had taken an additional withdrawal following the May 17, 2016 hearing, which was previously unknown. Husband did not dispute that an additional withdrawal had occurred. Nevertheless, the trial court still found that the parties had stipulated as to the division of household goods and furnishings. Because Husband had violated the condition of the agreement, there was no stipulation that the trial court could rely on with respect to the division of household goods

and furnishings. As a result, we find this matter must be remanded for further clarification as to the trial court's decision with regard to the division of household goods and furnishings. Wife's fourth assignment of error is sustained.

{¶ 43} Assignment of Error No. 5:

{¶ 44} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT MADE A FINDING THAT HUSBAND ENGAGED IN FINANCIAL MISCONDUCT BUT DID NOT COMPENSATE WIFE, THE OFFENDED SPOUSE.

{¶ 45} In her fifth assignment of error, Wife argues the trial court erred "by failing to compensate Wife in any manner for Husband's continued financial misconduct." We disagree. "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(3); *Smith*, 2017-Ohio-7463 at ¶ 12. Since the trial court's decision on this issue is discretionary, we will not reverse it absent an abuse of that discretion. *Brown v. Brown*, 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 26.

{¶ 46} As previously noted, Husband has depleted a large portion of the Fidelity IRA. The trial court found Husband's conduct amounted to financial misconduct. The trial court relied on the January 2016 IRA statement, which stated that the IRA was valued at $45,694.65. Because the trial court found that Husband had improperly withdrawn $6,250 from that account, the trial court set the value of the IRA at $51,944.65. Though Husband made additional improper withdraws from that account, the marital value of that account was still valued at $51,944.65.

{¶ 47} Wife complains that if Husband continues to withdraw money from the Fidelity IRA, he may be unable to make the full equalization payment to Wife. The trial court determined that if Husband was unable to make the entire equalization payment at once,

Wife would be awarded $150 per month until payment was made in full. Wife argues that this arrangement "essentially entices Husband to continue to make unauthorized withdrawals from his IRA and argue at a later date that the only remedy is for him to pay the amounts back at $150.00 per month."

{¶ 48} We conclude the trial court did not abuse its discretion. The trial court's decision set the marital value of the Fidelity IRA at the appropriate value. Though Husband has withdrawn funds from that account, the marital value remains the same and the parties are required to equalize their assets based on that value. Wife's argument as to Husband being enticed to further deplete the Fidelity IRA and instead pay $150 a month requires this court to speculate as to Husband's motivations, which we decline to do. As a result, we find the trial court did not abuse its discretion. Wife's fifth assignment of error is overruled.

{¶ 49} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion regarding the computation of the recapitulation index and the division of household goods and furnishings.

HENDRICKSON, P.J., and S. POWELL, J., concur.